Rockingham, }
Nov. 5, 1907. }

## CLARK *v.* TILTON *& a.*

If a person arrested upon criminal process freely and of his own volition requests the officer not to present him before the court to which the warrant is returnable, and is thereupon released from custody, he may be estopped to set up such omission of duty in support of an action of trespass for false imprisonment.

An action for false imprisonment may be maintained against an officer or creditor by a person arrested for obtaining goods under false pretences, if he transferred property to the creditor in settlement of the claim while in the custody of the officer, and his imprisonment was made use of to compel the transfer.

In an action of trespass for false imprisonment, such damages are to be assessed as will compensate the plaintiff for the injury he sustained because of the arrest.

TRESPASS, for assault and false imprisonment. Trial by jury and verdict for the plaintiff. Transferred from the April term, 1906, of the superior court by *Chamberlin,* J.

The plaintiff and one Frost were formerly partners in a general store in Windham. In March, 1904, the partnership was dissolved, the plaintiff assuming the firm's indebtedness. The defendant Tilton was a creditor to the amount of $858.69, and held notes of the firm for the indebtedness. March 15, 1904, the plaintiff mailed Tilton a check for $300 and a new note for the balance of the old debt. In an accompanying letter he wrote that he had bought out his former partner, that he hoped Tilton would take a new note in part payment as old ones became due, and that he was to be backed by George E. Seavey, whose financial standing could be looked up. By May 14, 1904, the plaintiff had fully paid the old debt. Thereafter he continued to trade with Tilton, making payments from time to time, until his failure in November, 1904. In February, 1905, he was petitioned into bankruptcy, being then indebted to Tilton, who proved his claim in bankruptcy. At a hearing before the referee in bankruptcy, the plaintiff testified that Seavey had not agreed to back him financially.

March 10, 1905, Tilton swore out a complaint against the plaintiff, charging him with obtaining goods under false pretences, upon which a warrant was issued returnable to the police court of Portsmouth. The charge in the complaint was that the plaintiff had procured credit of Tilton by falsely representing that Seavey,

a man of financial responsibility, was to back the plaintiff in the business in which he was about to engage. March 17, 1905, the defendant Cram, a deputy sheriff, arrested the plaintiff upon the warrant at Windham and took him to Portsmouth, arriving there after the adjournment of the regular session of the police court for that day. The plaintiff and Cram went to the office of Tilton's attorney, who was the justice by whom the warrant was issued, and an arrangement was made with the justice of the police court for a special hearing during the afternoon. While in Portsmouth, the plaintiff protested his innocence, claimed that the warrant was unjust, and was apparently anxious to obtain counsel. After making fruitless efforts in this direction, it was suggested that one Pulver, who had acted as counsel for Tilton in the bankruptcy proceeding, could act as counsel for the plaintiff. A conference was held, and Tilton's counsel explained to the plaintiff the meaning of the word "backer," as used in his letter. Being advised that the only way to escape jail was to secure Tilton for his debt, the plaintiff agreed to a conveyance of his homestead right and personal exemptions, and partly executed such a conveyance while at Portsmouth in the custody of Cram. At the plaintiff's request, Cram afterward accompanied him to Manchester, where his wife joined in the conveyance; and this being done, the officer released the plaintiff from arrest, at the request of himself and Tilton.

The defendants excepted to the following portion of the charge to the jury: "So far as the defendant Cram was concerned, it was his duty under the law to take the plaintiff under the warrant, and take him before the court, and make due return of the process; and he acted unlawfully in not presenting him before the court, and in permitting him to enter into this contract whereby he allowed this complaint to be suppressed, and he was liable for such damages resulting to the plaintiff in consequence of that suppression. The defendant Tilton, having lawfully sworn out the warrant and placed it in the hands of the deputy sheriff, had no right to enter into a contract whereby the warrant might be suppressed; and after participating in the contract and taking part in that wrongful act, he is liable for any wrong which Clark suffered as a result of this process which was used against Clark. The defendants are liable because the evidence, without any question, fails to show a justification of the suppression of the criminal process, and they are liable for such damages as result from the abuse. In other words, they are liable in exactly the same way as if the defendants had proceeded without a warrant." The jury were also instructed that they should find a verdict for the plain-

tiff, and that the only question for their consideration was one of damages.

G. K. & B. T. Bartlett, for the plaintiff.

Frink, Marvin & Batchelder, for the defendants.

BINGHAM, J.   Every arrest is *prima facie* a trespass (*Jackson* v. *Knowlton*, 173 Mass. 94; 12 Am. & Eng. Enc. Law, 2d ed., 724); and according to the rule of the common law, an officer could not avail himself of civil or criminal process to justify an arrest, unless he returned the writ or produced the prisoner with the warrant before the court to which the process was returnable (*Burrett* v. *White*, 3 N. H. 210, 229; *Parker* v. *Pattee*, 4 N. H. 530; *Poor* v. *Taggart*, 37 N. H. 544; *Taylor* v. *Jones*, 42 N. H. 25; *Boston & Maine R. R.* v. *Small*, 85 Me. 462; *Wright* v. *Marvin*, 59 Vt. 437; *Gibson* v. *Holmes*, 78 Vt. 110; *Tubbs* v. *Tukey*, 3 Cush. 437; *Brock* v. *Stimson*, 108 Mass. 520; *Williams* v. *Ives*, 25 Conn. 568, 573), or unless it was made to appear that the prisoner had so conducted with reference to the officer's omission that he had estopped himself from interposing the omission to the officer's use of the process to justify the arrest.   *Wright* v. *Marvin, supra; Ellis* v. *Cleveland*, 54 Vt. 437; *Williams* v. *Babbitt*, 14 Gray 141; *Phillips* v. *Fadden*, 125 Mass. 193; *Caffrey* v. *Drugan*, 144 Mass. 294, 296; *Joyce* v. *Parkhurst*, 150 Mass. 243, 246; *Douglas* v. *Barber*, 18 R. I. 459; *Mulberry* v. *Fuellhart*, 203 Pa. St. 573; *Twilley* v. *Perkins*, 77 Md. 252; *Richardson* v. *Dybedahl*, 14 So. Dak. 126; N. E. Sher. & Const. 283, 284; 19 Cyc. 338.

In *Parker* v. *Pattee, supra*, it was said that an action of trespass could not be maintained against an officer who had made an arrest upon civil process, for his failure to return the writ to court, if he delivered the writ to the plaintiff's attorney and a settlement was made by the parties before the return day.   This view of the law must have proceeded upon the theory that, the suit having been settled by agreement of the parties, the process could be used to justify the arrest, on the ground that the settlement was conclusive or *prima facie* evidence of an agreement that the person arrested would not interpose the omission to the officer's use of the process as a justification.   *Paine* v. *Farr*, 118 Mass. 74.

In the service of criminal process, while it is the duty of an officer, having made an arrest, to take the prisoner as soon as circumstances will reasonably permit before the court to which the warrant is returnable for hearing, still this duty is not so impera-

tive that its performance, at least as between the officer and the prisoner, may not be omitted; and if omitted at the prisoner's request, of such a nature that the prisoner may not be estopped to interpose the omission to the officer's use of the warrant to justify such acts under it as were regular and legal. ᛡ That this is the law in many jurisdictions may be seen from an examination of the cases above cited; and no reason appears why this should not be so, if the prisoner's request not to be returned before the court is made of his own free will and is not procured unfairly or through coercion.

Again, it is the law of this jurisdiction, that if an arrest is made for a just cause, upon a warrant which is regular and legal upon its face and issued from a court of competent jurisdiction, and the imprisonment consequent thereon is made use of to extort money from the prisoner, or to compel him against his will to pay a debt, such conduct makes the imprisonment a duress, which will render every act done under it voidable and make those directing or participating in the improper use of the process liable as trespassers *ab initio.* *Richardson* v. *Duncan*, 3 N. H. 508; *Severance* v. *Kimball*, 8 N. H. 386; *Shaw* v. *Spooner*, 9 N. H. 197, 200; *Colby* v. *Jackson*, 12 N. H. 526, 533, 534; *State* v. *Weed*, 21 N. H. 262; *Breck* v. *Blanchard*, 22 N. H. 303, 310, 311; *Mullen* v. *Brown*, 138 Mass. 114; *Wood* v. *Graves*, 144 Mass. 365; *Bath* v. *Metcalf*, 145 Mass. 274; *Everett* v. *Henderson*, 146 Mass. 89; *White* v. *Company*, 181 Mass. 339. In *Shaw* v. *Spooner*, *supra*, Parker, C. J., expressed the view of the court in this language: " It must be distinctly understood that it is wholly illegal to use the criminal process of the state to extort money, or even compel the payment of debts. It was not provided for any such purpose. If a creditor is desirous of collecting a demand lawfully due to him, the laws have provided remedies deemed by the legislature suitable and competent for that purpose."

In the present case the court instructed the jury, in substance, that the only question for them to consider was one of damages; that the defendant Tilton had no right to enter into a contract with the plaintiff whereby he obtained a conveyance of the plaintiff's homestead right and personal exemptions in settlement of his account against him; and that the defendant Cram acted unlawfully in not presenting the plaintiff before the court and in permitting him to enter into the contract with Tilton. These instructions cannot be sustained, for, as we have seen, the jury should have been told that, to entitle the plaintiff to recover in this action against Cram, they must be satisfied either (1) that the plaintiff did not freely and of his own volition request the officer not to return him before the court, and is not estopped to take advantage

of the officer's omission to do so, or (2) that the officer made use of the plaintiff's imprisonment to compel him against his will to transfer his property to Tilton in payment of the debt; and as respects the defendant Tilton, they should have been told that they must be satisfied that he, either directly or through Cram, made use of the plaintiff's imprisonment to compel him against his will to transfer his property in payment of the debt. The charge of the court would also give one the impression that the jury were instructed to assess such damages as resulted to the plaintiff in consequence of the suppression of the criminal prosecution. If this is its meaning, it is clearly wrong. The damages to be assessed are such as will compensate the plaintiff for the injury he has sustained because of the arrest.

It is not deemed advisable at this time to consider the questions raised by the exceptions to evidence. At another trial the same evidence may not be offered, and if offered, the issue may not be the same. The exception to the charge is sustained, and the order is,

*Verdict set aside.*

All concurred.