## WHITMAN v. BRANSTROM.

1. ATTACHMENT—WORDS AND PHRASES—ARREST—CONTEMPT.
    A writ of attachment for the arrest of a person is defined as a writ issued by a court of record, commanding the sheriff to bring before it a person who is charged with contempt of court.

2. SAME—COURT PROCEEDINGS—STATUTES.
    Act No. 379, Pub. Acts 1913 (3 Comp. Laws 1915, § 11443 *et seq.*), authorizing attachment to issue for the arrest of a person in default in making payments of alimony ordered by the court, clearly contemplates a court action, requiring such attachment to be issued by the registrar in chancery, and requiring the officer to bring the party in

default "immediately before the court to answer for such neglect."

3. SAME—FALSE IMPRISONMENT — NULLITY—VOID WRIT — PROTECTION TO OFFICER.

An attachment signed by the circuit judge commanding the sheriff to arrest plaintiff and bring him before the judge at his office or chambers, not sealed with the seal of the court, not issued and signed by the clerk of the court, and not subscribed or indorsed with the name of the attorney for the plaintiff in the divorce proceedings, was a nullity and void upon its face, and afforded no protection in an action for false imprisonment against the sheriff and the attorney who procured the signature of the circuit judge to said instrument.

Case-made from Muskegon; Vanderwerp, J. Submitted June 6, 1918. (Docket No. 51.) Decided July 18, 1918.

Case by Willis E. Whitman against William J. Branstrom and others for false imprisonment. Judgment for defendants on a directed verdict. Plaintiff appeals. Reversed.

*John G. Anderson*, for appellant.

*William J. Branstrom* and *Carpenter & Jackson* (*Charles B. Cross* and *Willard J. Turner*, of counsel), for appellees.

STONE, J. This is an action on the case brought against the defendants for alleged false imprisonment of the plaintiff by the defendants, under and by virtue of an instrument called an "attachment," claimed by the plaintiff to be void on its face. Said instrument was in the words and figures following:

"STATE OF MICHIGAN—In the Circuit Court for the County of Newaygo, In Chancery.

"In the name of the People of the State of Michigan, To the Sheriff of said County:

"Whereas, it satisfactorily appears to me by petition of Elizabeth Whitman, filed in a certain cause in

said court, in which Elizabeth Whitman is plaintiff and Willis Whitman is defendant that the said Willis Whitman is now in default in the payment of temporary alimony and suit money which he was ordered by this court to pay said plaintiff by the terms of an order duly entered and filed in said cause, and

"Whereas, the said petition, as aforesaid, was filed by the said Elizabeth Whitman according to the provisions of Act No. 379, of the Public Acts of the State of Michigan, for the year 1913, the amount in default at this time is thirty-one dollars ($31.00).

"Now, therefore, you are commanded forthwith to arrest the said Willis Whitman and bring him before me at my office in the village of White Cloud, in said county, or at my office or chambers in the city of Big Rapids, county of Mecosta, State of Michigan (whichever place I may be at the time of the apprehension of the said Willis Whitman), without delay, to be dealt with according to law."

"Dated, September 15, 1917.

"JOSEPH BARTON,<br>"Circuit Judge."

The plea was the general issue, with a notice thereto annexed that the defendants would give in evidence on the trial and insist in their defense that a divorce suit was pending in the circuit court for the county of Newaygo, in chancery, in which Elizabeth Whitman was plaintiff and Willis Whitman was defendant; that on August 21, 1917, an order was made in said cause requiring said Willis Whitman to pay certain money to the said Elizabeth Whitman as temporary alimony and expenses; that on September 15, 1917, the circuit judge of said court made and executed the order or attachment above set forth; that said order or attachment was in proper form, and duly and legally issued by the said court, and that the sheriff of Newaygo county, in accordance with the mandate of said order or attachment, did arrest the said Willis Whitman and bring him before said court.

Upon the trial the plaintiff offered in evidence the

said attachment, and gave evidence that he was arrested under and by virtue of said instrument on October 20, 1917, and was placed in the county jail of Muskegon county for a period of about two hours, and was then taken by defendant David Moote, sheriff of Newaygo county, to White Cloud, the county seat of Newaygo county, where he was detained in jail until October 23, 1917, when he was taken before the court, and after a hearing was discharged from arrest.

It was alleged and inferentially appeared that defendant William J. Branstrom procured the signature of the circuit judge to said instrument, that defendant Carl A. Stauffer was the sheriff of Muskegon county and the keeper of the jail of that county, where plaintiff was imprisoned as aforesaid.

Evidence was also introduced showing the proceedings taken in the divorce suit of Elizabeth Whitman v. Willis Whitman, in the circuit court for the county of Newaygo, in chancery, whereby it was made to appear that said court had jurisdiction of said cause and of the parties thereto, and that all of the proceedings had therein anterior to the issuing of said attachment or order, were regular and in conformity to law.

At the close of the plaintiff's case, counsel for defendants moved the court to direct a verdict of not guilty, for the reason that the circuit judge had authority to issue said attachment; that it was in proper form, fair on its face, and protected the officer making the arrest, and those acting with him. This motion was granted, apparently upon the authority of *Thomas* v. *Rosecrantz,* 193 Mich. 357, and the authorities there cited, and a verdict and judgment were rendered for the defendants.

The plaintiff is here upon a case-made, and under appropriate assignments of error he urges that the so-called attachment was a nullity and void upon its face, was no protection to the defendants and that the court

erred in directing a verdict and judgment for the defendants.

Act No. 379, Pub. Acts 1913 (3 Comp. Laws 1915, § 11443 *et seq.*), should be carefully examined. It is entitled "An act to facilitate the collection of temporary and permanent alimony ordered to be paid in suits for divorce." It should be said that the constitutionality of this act is not here questioned or involved. Sections 2 and 4 of the act are as follows:

"SEC. 2. When any decree or order shall have been made for the payment of temporary or permanent alimony to be paid in certain stipulated payments directed to be made in said order to the register of the court, and any of such payments shall be in default, the party prejudiced thereby may make a motion before the court making such order showing by the records in the register's office that such default has been made, and thereupon the court shall forthwith issue an attachment to arrest such party in default and bring him immediately before the court to answer for such neglect."

"SEC. 4. When said attachment shall be issued it shall be executed by the sheriff of the county, or by any officer authorized to make such arrest, who shall arrest the party named therein and keep him in actual custody and bring him forthwith before the court issuing such attachment, and shall keep and detain him until the court shall make some further order in the premises."

By the provisions of section 5 of the act it is clear that the register in chancery is required to issue the attachment.

Section 12405, 3 Comp. Laws 1915, provides:

"The style of all process from courts of record at law or in chancery in this State shall be 'In the name of the people of the State of Michigan,' and such process shall be tested in the name of the chief justice, or presiding justice or judge, or one of the judges of the court from which the same shall issue, be sealed with the seal of the court, and signed by the clerk thereof, and before the delivery thereof to any officer to be exe-

cuted shall be subscribed or indorsed with the name of the attorney for the plaintiff." * * *

A writ of attachment for the arrest of a person, is defined by Blackstone, and by numerous courts, as a writ issued by the court of records, commanding the sheriff to bring before it a person who is charged with contempt of court.

An examination of section 2 of the act of 1913, shows that it is the *court,* and not the *circuit judge* that issues the attachment, and the statute required the officer to bring the party in default "immediately before the court to answer for such neglect," and not before the circuit judge at his office or chambers.

It is apparent that this whole proceeding is a *court* proceeding, and not a matter that could be initiated, or heard before the circuit judge. The statute contemplates that the party is not yet in contempt, and could not be, under our statutes and decisions, until he had had a hearing in court.

Was this so-called process fair on its face? The following excerpt from Cooley on Torts (2d Ed.), p. 538, will, we think, answer that question in the negative:

"The process that shall protect an officer must, to use the customary legal expression, be *fair on its face.* By this is not meant that it shall appear to be perfectly regular, and in all respects in accord with proper practice, and after the most approved form; but what is intended is, that it shall apparently be process lawfully issued, and such as the officer might lawfully serve. More precisely, that process may be said to be fair on its face which proceeds from a court, magistrate, or body having authority of law to issue process of that nature, and which is in legal form, and on its face contains nothing to notify or fairly appraise the officer that it is issued without authority. When such appears to be the process, the officer is protected in making service, and he is not concerned with any illegalities that may exist back of it."

Judge COOLEY gives illustrative instances of process not fair on its face; and, among others, at page 544 appears the following:

"Process of contempt issued by a judge of a court when only the court as a body had authority to issue it." Citing *Van Sandau* v. *Turner*, 6 Q. B. 773.

In the instant case the so-called attachment was *not* tested in the name of the judge. It was *not* sealed with the seal of the court. It was *not* issued and signed by the clerk of the court, and it was *not* subscribed or indorsed with the name of the attorney for the plaintiff. In fact it does *not* show on its face that it was issued from, or by authority, of any court.

As was said upon a like subject in *State, ex rel. Hansen,* v. *Carrico,* 86 Neb. 448 (125 N. W. 1110), in a mandamus case, "An examination of the process issued in this case shows that every provision of these sections has been violated, or, to say the least, ignored," and the whole proceeding was held void. If that could be said in a mandamus case, how much more should it be said where a party has been arrested and imprisoned under such a process. We are satisfied that there is nothing in Act No. 379, Pub. Acts 1913, giving the circuit judge any power or authority to issue an attachment, or to make any such order in the chancery case. The action contemplated by the statute is *court action,* from beginning to end.

We are constrained to say that the so-called attachment in the instant case, was a nullity, and was no protection to the defendants. In our opinion the case of *Thomas* v. *Rosecrantz, supra,* is clearly distinguished, and is not at all controlling here.

The judgment of the circuit court is reversed and a new trial granted, with costs to the appellant.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.