OXFORD *v.* BERRY.

1. FALSE IMPRISONMENT — HABEAS CORPUS — RES ADJUDICATA — PARTIES CONCLUDED.

In an action for false imprisonment against the sheriff, deputy sheriff, and probation officer, a judgment discharging plaintiff in *habeas corpus* proceedings directed against the sheriff was not *res adjudicata* as to the deputy sheriff and probation officer, they not having appeared in same so as to be in any sense a party thereto.

2. DIVORCE—ALIMONY—DEFAULT—CONTEMPT—JURISDICTION.

Where plaintiff had been arrested upon an attachment issued in pursuance of Act No. 379, Pub. Acts 1913 (3 Comp. Laws 1915, § 11443), being an act to facilitate the collection of alimony, and had a hearing, the court had jurisdiction to enter an order finding him guilty of contempt for default in payment of alimony, and committing him to the charge and custody of the probation officer until all sums of money due for alimony were paid.

3. SAME—ARREST—BENCH WARRANT—CONTEMPT.

Plaintiff being at large, and having been found guilty of contempt, it was competent for the court to issue a bench warrant for his arrest.

4. CONTEMPT—ARREST—BENCH WARRANT.

A "bench warrant" is defined as a process issued by the court itself, or "from the bench," for the attachment or arrest of a person, either in case of contempt, or where an indictment has been found against him.

5. ARREST—DIVORCE—CONTEMPT—BENCH WARRANT — SURPLUSAGE —PROTECTION OF OFFICER.

When the record showed that plaintiff was *prima facie* guilty of contempt—failure to pay alimony—and such charge was written in the printed form used for the bench warrant, said warrant was fair upon its face, and a protection to the officer making the arrest, although it contained certain redundant matter, which was mere surplusage, no information having been filed by the prosecuting attorney, as recited therein.

6. EVIDENCE—CIRCUIT COURTS—JUDGES—JUDICIAL NOTICE.

The Supreme Court will take notice that there was more

than one judge of the circuit court for the county of Kent.

7. Arrest — Duty to Present Party Before Court — Delay — Breach of Duty.

When an officer has made an arrest, it is his duty, even in criminal cases, as soon as possible, to bring the party before the court according to the import of the warrant, and if the officer be guilty of unnecessary delay in so doing, it is a breach of his duty which is the same whether the arrest was made with or without process.

8. Same — Unseasonable Time — Reasonable Delay.

If the time when the arrest is made be unseasonable, or in or near the night, whereby the officer cannot attend the court, or if the party be sick or the like, the officer may secure the prisoner in a house or other place until the next day, or until such time as it may be reasonable to bring him into court; and this rule is applicable in cases of civil contempt as well as in criminal contempt.

9. False Imprisonment — Delay in Arraignment.

Where the officer unreasonably delays in making the arraignment, the delay amounts to false imprisonment.

10. Same — Delay — Question for Jury.

The facts in this case being in dispute, the question as to whether there was an unreasonable delay in presenting plaintiff before the court was one for the jury; but where the facts are conceded or clearly established the question is one of law for the court.

11. Same — Right to Arraignment — Waiver.

Prisoner's right to be presented before the court without unreasonable delay may be waived by him.

12. Same — Good Faith — Justification.

Good faith does not excuse an unauthorized arrest, nor an unreasonable detention and deprivation of one's liberty.

13. Same — Trespasser ab Initio — Intent.

An unlawful detention, following a lawful arrest by a sheriff, does not make him a trespasser *ab initio*, in the absence of evidence of intent to use said arrest for a subsequent wrong.

14. Arrest — Custody — Incarceration Among Felons — Statutes.

Where plaintiff was under arrest charged with civil contempt, but no judgment had been pronounced against him,

his "incarceration among felons," was in violation of his rights under section 14762, 3 Comp. Laws 1915.

15. WITNESSES — EVIDENCE — ADMISSIBILITY — RES ADJUDICATA — CROSS-EXAMINATION—CREDIBILITY OF WITNESS.

In an action for false imprisonment for contempt, the merits of the divorce case, out of which the contempt charge arose, was inadmissible except as affecting plaintiff's credibility, on cross-examination.

Error to Kent; Collingwood, J., presiding. Submitted October 23, 1918. (Docket No. 22.) Decided December 27, 1918. Rehearing denied May 1, 1919.

Case by Richard E. Oxford against Charles A. Berry and others for false imprisonment. Judgment for defendants on a directed verdict. Plaintiff brings error. Reversed as to defendant Berry, and affirmed as to other defendants.

*Broomfield & Worcester* and *Lombard & Hext,* for appellant.

*H. Monroe Dunham* and *John M. Dunham,* for appellees.

STONE, J. This is an action on the case for damages for false imprisonment of plaintiff against the defendant Berry, sheriff of Kent county, defendant Griswold, deputy sheriff, and defendant Hyde, probation officer of said county. The following are some of the salient features of the case:

The wife of the plaintiff had filed a bill against him for divorce in the circuit court for the county of Kent, in chancery, on June 17, 1914. On July 1, 1914, upon the petition of the wife, the court upon due hearing ordered the defendant therein (plaintiff here) to pay to the register of the court the sum of $15 per week in advance, the first payment to date from June 29, 1914, and a like sum of $15 on Monday of each week thereafter for her support, and the support of the

minor children of said parties, during the pendency of the suit. Also that said Richard E. Oxford pay to the register of the court the further sum of $50 for complainant therein for the purpose of supplying her said children with necessary clothing and immediate supplies. Also that he pay to the register within in 30 days from the date thereof, the further sum of $25 for solicitor's fees.

On September 9, 1915, upon the sworn petition of the complainant therein, alleging that said Richard E. Oxford was in arrears on said order, in the sum of $256.50, and had violated said order, and had failed and neglected to pay said amount for such purposes, it was ordered by the court that a precept of attachment issue out of and under the seal of the court, directed to the sheriff of said county, commanding him forthwith to take the body of said Richard E. Oxford, and keep him in actual custody, and bring him forthwith before the court, and keep and detain him until it should make some further order in the premises, or until the defendant therein should be discharged according to law.

Under date of September 11, 1915, appears the following order duly entitled in said cause, as a court order, and signed by Willis B. Perkins, the circuit judge:

"In this cause a writ of attachment having been heretofore issued out of and under the seal of this court against the defendant, Richard E. Oxford, for his misconduct and contempt in violation of the order for payment of alimony, heretofore issued in this cause, which writ of attachment was directed to the sheriff of the county and was returnable forthwith, and the sheriff having returned that he had attached the said Richard E. Oxford and taken his body, and had him in custody before the court, on the said 11th day of September, A. D. 1915, and the said Richard E. Oxford having been personally before the court by virtue of said attachment on the said 11th day of Sep-

tember, A. D. 1915, and it appearing to the court, after having heard the answer of the said defendant, Richard E. Oxford, that the said Richard E. Oxford is guilty of, and has committed the misconduct and contempt charged: It is ordered and adjudged that the said Richard E. Oxford is guilty of the said misconduct and contempt alleged, and that the said misconduct and contempt was calculated to, and did, injure and impair and prejudice the rights and equities of the complainant in this cause, and it is therefore ordered that the said Richard E. Oxford be, and he hereby is, ordered to stand committed to the charge and custody of Joseph E. Hyde, probation officer of this court, and to remain charged with such contempt until all sums of money due and unpaid on the order for alimony, heretofore referred to, be fully paid and satisfied, or until the further order of this court."

After this order of September 11, 1915, no further order of the court appears to have been made in said cause, and the plaintiff herein was treated as on probation, under the charge and supervision of defendant Hyde, as probation officer. Said probation officer permitted this plaintiff to return to his home in Big Rapids, and he was visited there by the said probation officer.

Act No. 239, Pub. Acts 1913 (3 Comp. Laws 1915, § 11449), being entitled—

"An act to authorize courts of record to place parties found guilty of contempt of court for failure to pay alimony, temporary or permanent, on probation in divorce and separate maintenance cases,"

—is discussed by counsel. It may be said in passing that there is no claim that plaintiff was ever sentenced for contempt of court, or that any commitment for contempt has ever been issued against him.

Later, and on the 22d of November, 1915 (the plaintiff herein being still in arrears in the payment of alimony), upon the verbal request and report of the defendant Hyde, Judge Perkins signed and deliv-

ered to said defendant a paper called in this record a "bench warrant" in the words and figures following:

"STATE OF MICHIGAN, ⎱ SS.
    "COUNTY OF KENT, ⎰

"The Circuit Court for the County of Kent,
    "Greeting.
"To the Sheriff of said County:

"In the name of the people of the State of Michigan: You are hereby commanded to arrest the body of Richard E. Oxford, and bring him forthwith before the circuit court for the county of Kent, to answer unto an information filed against him in behalf of said people by the prosecuting attorney of the county of Kent, aforesaid, for the crime of contempt of court, failure to pay alimony.

"Given under my hand and the seal of said court, at the city of Grand Rapids, this 22d day of November, A. D. 1915.

"WILLIS B. PERKINS,<br>"Circuit Judge.

"..........................,
                "Prosecuting Attorney."

Concerning this bench warrant defendant Hyde testified, on cross-examination, as follows:

"I caused the bench warrant (defendant's exhibit 10) of November 22d to be issued. I did not file any affidavit with Judge Perkins before it was issued, and did not after either of these bench warrants. After the clerk made it out, I took it up to Judge Perkins and asked him to sign it, and he did. I read it when it was made out in the clerk's office. I read what was there. Don't know whether Judge Perkins read it before he signed it or not. He looked at it; he didn't read it aloud. * * *

"Q. Well, you know what an information is, speaking of the criminal law, do you not?

"A. Yes, sir.

"Q. Yes. And you know what a crime is, speaking of criminal law, do you not?

"A. Yes, sir.

"Q. You knew who the prosecuting attorney was at that time, did you not?

"A. Yes, sir.

"*Q.* Did you ever present this document to the prosecuting attorney of Kent county?

"*A.* No, sir.

"*Q.* The prosecuting attorney had not filed' any information against Mr. Oxford, had he?

"*A.* No, sir.

"*Q.* You knew that at the time you presented this to Judge Perkins, did you not?

"*A.* Sure.

"*Q.* Yes, and you knew that Mr. Oxford had not committed any crime, didn't you?

"*A.* No, he had not committed any crime. * * * I knew that no affidavit had been filed with Judge Perkins as the basis for the issuance of that bench warrant. When I saw Mr. Oxford in jail in November, 1915, he was in the big cage upstairs. They keep persons convicted of and charged with felonies and misdemeanors in that cage. I couldn't tell you how many were there at the time I saw him.

"*Q.* Well, would you say there was one, or twenty?

"*A.* Well, I would say there was one, but I would not say there were twenty.

"*Q.* You would say there were more than one, and less than twenty, would you?

"*A.* Yes, sir; easy. I talked with him there just a few minutes at that time. After Judge Perkins signed it, I took the bench warrant of November 22d to the sheriff's office and presented it to Mr. Gibbs, the chief deputy, and asked him to see that it was served. I didn't tell the clerk, that I remember of, what to put in the bench warrant when he made it out. He wanted to know what it was and I told him it was a bench warrant for Richard E. Oxford, contempt of court, failure to pay alimony, and he made that part out in accordance with my instructions. The written part was dictated by me."

The plaintiff herein was arrested in Big Rapids on November 22, 1915, on the said bench warrant by the defendant Griswold, and brought to Grand Rapids.

Referring to the bench warrant of November 22d, defendant Griswold, on cross-examination, testified:

"This is the only document I had in my possession when I went to Big Rapids at that time and took Mr.

Oxford into custody. I had no written commitment.
I first brought him to the sheriff's office. Don't re-
member whether we had any conversation going from
the train. I would not say whether or not he request-
ed a hearing before the judge. If he says he did, I
wouldn't deny it. After bringing him to the sheriff's
office, I went to see if the judge was there. Mr. Ox-
ford was not there. He was in the sheriff's office,
and did not hear what took place between me and the
judge. After I came out from the judge's office, I
took him over to the jail and did not bring him before
the judge that night. Exhibit 10 is the only document
I had in my possession at that time with reference
to Mr. Oxford. From November 22d to November
29th, I did not bring Mr. Oxford before the judge.
Don't recollect having any talk with Mr. Oxford at
the jail. I didn't know, at that time, in what part
of the jail he was confined. I learned later. I knew
that the reason for his arrest was that it was claimed
he was not paying alimony."

It appears to be undisputed that the plaintiff was
placed in that part of the jail reserved for the deten-
tion of persons charged with and convicted of crime,
and was kept there until November 29, 1915, when
he was released, but not as the result of any hearing
in court.

Again, and on December 27, 1915, another bench
warrant was issued for the arrest of the plaintiff,
signed, and in the exact form, except as to date, as
was the writ of November 22, 1915, and issued under
similar circumstances. Referring to this last war-
rant, defendant Hyde testified:

"I had a second bench warrant issued on December
27th for the same purpose—to get Mr. Oxford to pay
alimony; that was the sole purpose."

Referring to this second arrest, the defendant Gris-
wold testified:

"I next saw him the morning of the 4th of January.
I arrested him that morning. Exhibit D-12 is the
only document I had in my possession then. On

this occasion, I also first took him to the sheriff's office, in the court house. It was in the morning. I think I took him into Judge Perkins' office. I won't say for sure. I am pretty positive I took Mr. Oxford into the judge's office with me on that occasion, but I might be mistaken about that. I left him in the office in charge of Mr. Gilman when I went to dinner, and he took him to jail at my request and told him that the court ordered him over. I did not bring him to court at any time, from January 4th to February 10th for a hearing. The only written authority I had was exhibit 12."

The plaintiff testified that from the time he was arrested on November 22d, until his release on November 29th, he was not brought before any court or magistrate and given a hearing. Referring to the last arrest he testified:

"On the 4th of January, 1916, I was again arrested at my office in Big Rapids by Mr. Griswold. He took me to Grand Rapids.  *  *  *  He took me to the sheriff's office, in the court house. We stayed there a little while and he went out. I told him I wanted to see the judge, and he came back and told me the judge was not ready for me, that we would have to go down to the jail.

"Q. Did you tell him what you wanted to see the judge for?

"A. Yes; I wanted a hearing.  *  *  *

"Q. Did he tell you when the judge would be ready for you?

"A. No, sir. Then he took me down to the jail, and put me in the same place as before, in the same part of the jail.  *  *  *  On this occasion I was there from January 4th to February 10th, 37 days, during which time I was not out of the cage at all."

Judge Perkins was called and sworn as a witness for the defendants. Relative to the bench warrants, and to the action taken thereunder, on direct examination, he testified as follows:

"I remember issuing the bench warrants of November 22d and December 27, 1915. My recollection

is that Mr. Oxford appeared before me with the probation officer shortly after the bench warrants were issued.

"Q. Do you recall what disposal was made of the matter on the two occasions that Mr. Oxford was brought before you on those two bench warrants?

"A. Yes. On one or two occasions. I directed the officer to take him to jail to await further action of the court. * * * I think those were the occasions when Mr. Oxford was brought before me on those bench warrants with the probation officer. Of course, I have had a great many similar cases since that time, and my recollection is rather indistinct, but that was the usual custom and that is my recollection as I have it now in reference to this."

On cross-examination he testified:

"Q. Now, I think you said you didn't know whether Mr. Oxford was actually brought before you on that bench warrant, or not?

"A. I can't tell whether it was this one or some other bench warrant. I know he was brought before me on the so-called attachment of September 10th or 11th. He was brought before me on one or more of those bench warrants subsequent to the order placing him on probation. I wouldn't fix the date at all. If he was brought before me on either of the bench warrants, he did not have any hearing at that time. No witness sworn or testimony taken at all. * * * He had no hearing before me between January 4, 1916, and February 10, 1916, and he had no hearing before me between November 22, 1915, and November 29, 1915, that I recall, and during those periods, I issued no sentence or commitment confining him to the county jail."

Section 4 of Act No. 105 of the Public Acts of 1913 (1 Comp. Laws 1915, § 2032) is referred to by defendants as authorizing the issuance of the bench warrants.

On February 10, 1916, upon the petition of the plaintiff, a writ of *habeas corpus* was issued out of the circuit court for the county of Kent, by Judge Mc-

Donald, directed to the defendant Berry, for the purpose of inquiring into the cause of plaintiff's imprisonment. The return of said defendant stated among other things as follows:

"That said Richard E. Oxford was in his custody by virtue of an order of the circuit court for the county of Kent, in chancery, bearing date September 11, 1915, in the case of Nellie M. Oxford, complainant, *v*. Richard E. Oxford, defendant, whereby the said Richard E. Oxford was adjudged guilty of contempt of court, and the said Richard E. Oxford was ordered to stand committed to the custody of Joseph E. Hyde, probation officer of Kent county, and the said Richard was taken into custody and placed in said county jail, by the authority and direction of the said Joseph E. Hyde, as probation officer, and under and by virtue of the authority of a bench warrant, issued December 27, 1915, by the Honorable Willis B. Perkins, circuit judge, under the seal of said court," copies of which were attached.

The hearing was adjourned to, and took place February 19, 1916, at which time Judge McDonald determined and made an order as follows:

"That the order of this court, bearing date September 11, 1915, in the case of Nellie M. Oxford, complainant, *v*. Richard E. Oxford, defendant, whereby the said defendant was ordered to stand committed to the charge and custody of Joseph E. Hyde, probation officer of said county of Kent, did not authorize the commitment of said Richard E. Oxford to the county jail of said county, without the further order of the court, and it appearing that no further order was made therein; and it further appearing that the sheriff and deputy sheriff had no right to detain the petitioner in the Kent county jail, and especially in that part of the jail reserved for the detention of criminals; it is therefore ordered that the said petition be, and the same is hereby granted, and the said Richard E. Oxford be, and he hereby is discharged from the custody of the said Charles Berry, sheriff of Kent county."

The plaintiff was thereupon discharged from custody, and on August 26, 1916, he began this suit. The declaration counts upon the said arrests of November 22, 1915, and January 4, 1916, alleging that plaintiff was arrested—

"without any process, and without any lawful process fair on its face, and without any sworn evidence being first filed with a magistrate immediately prior thereto, charging this plaintiff with the violation of some law for which lawful process could issue [defendants did] unlawfully cause the arrest of plaintiff, and did then and there unlawfully take him to the county jail of Kent county aforesaid, and did then and there, from November 22d to November 27, 1915, without any hearing, and against his will, unlawfully detain him in a cell, in that part of said jail reserved for, and where persons held for, and convicted of high crimes and misdemeanors were incarcerated, which part of the jail was infested with rats, and cockroaches, and did then and there unlawfully open, inspect and read plaintiff's outgoing mail, and did then and there greatly injure him, in his good name," etc.,

—in violation of his constitutional rights, naming them, and contrary to section 10534 of the Compiled Laws of 1897 (3 Comp. Laws 1915, § 14762). A similar charge is made with reference to the arrest of January 4, 1916.

Under the plea of the general issue the defendants gave a lengthy notice that they would justify their action under the said order of September 11, 1915, and said bench warrants and the statutes applicable to such proceedings. At the close of all the testimony, and upon the motion of the defendants, the trial court directed a verdict and judgment for the defendants to be entered, and the plaintiff has brought the case here on writ of error.

There is a large number of assignments of error. Instead of treating them separately, we will consider the points argued by appellant in his brief, all of which are covered by the assignments of error.

It is first claimed by appellant that the order made by Judge McDonald in the *habeas corpus* proceeding was a final order, and that the matters passed upon and determined by him are *res adjudicata,* not only as to defendant Berry, but as to defendants Hyde and Griswold, they having made affidavits in support of the return of the sheriff to said writ, as to matters not within his personal knowledge.

Appellant refers to the case of *Castor* v. *Bates,* 127 Mich. 285 (89 Am. St. Rep. 471), as supporting this contention. We do not think that case a parallel one. In that case the plaintiff, having been arrested on a *ca. sa.* at the instance of the defendant, sued out a writ of *habeas corpus,* and, on the hearing, after notice to defendant under 3 Comp. Laws 1897, § 9885, was discharged on the ground that the judgment upon which the execution was issued was void, it was held that such adjudication was conclusive in a subsequent action against defendant for false imprisonment. An examination of that case will show that defendant appeared as a party, and was heard in the case. In the instant case neither Griswold nor Hyde appeared or took any part in the proceeding, so as to be in any sense a party thereto. Neither of them had any control over the proceeding. We do not think they are bound by the judgment or order. *Fowler* v. *Blount,* 191 Mich. 575.

There is respectable authority which holds that an order or judgment in a *habeas corpus* suit is *res adjudicata* as to the person charged with unlawfully restraining another of his liberty, until reversed in some proper proceeding. *State, ex rel. Durner,* v. *Huegin,* 110 Wis. 189 (85 N. W. 1046, 62 L. R. A. 700); 21 Cyc. p. 349.

It is the next claim of appellant that the order of September 11, 1915, was void, and no justification.

We do not agree with this contention. In our opinion the court had jurisdiction to make the order of September 11, 1915. The plaintiff had been arrested upon an attachment issued in pursuance of Act No. 379, Pub. Acts 1913 (3 Comp. Laws 1915, § 11443), entitled:

"An act to facilitate the collection of temporary and permanent alimony ordered to be paid in suits for divorce."

He had been brought before the court and had had a hearing. It will be noted that the declaration does not count upon his arrest upon the attachment which brought him into court on that occasion. We passed upon this statute in *Whitman* v. *Branstrom*, 202 Mich. 457, and said:

"The statute contemplates that the party is not yet in contempt, and could not be, under our statutes and decisions until he had had a hearing in court."

That hearing seems to have been had on September 11, 1915. We agree with counsel for appellant that the order made on that date indicates that the court had in mind the statute relative to contempt, to enforce civil remedies as amended by Act No. 230, Pub. Acts 1899, as the order set forth that the misconduct was calculated to, and did injure and impair the rights and equities of the complainant. It will be observed that no judgment was pronounced upon the plaintiff for the contempt of court, of which he was found guilty.

Counsel next discuss the probation law, and claim that the provisions of the uniform probation law (Act No. 105, Pub. Acts 1913) are not applicable to husbands found guilty of contempt of court for nonpayment of alimony; and that Act No. 239, Pub. Acts 1913, seeking to enlarge the scope of the uniform probation law, is unconstitutional. We do not find it nec-

essary to pass upon this question, for we are of the opinion that the defendant therein (plaintiff here) being at large, and having been found guilty of contempt, it was competent for the court to issue a bench warrant for his arrest. A bench warrant is defined as a process issued by the court itself, or "from the bench," for the attachment or arrest of a person; either in case of contempt, or where an indictment has been found against him. Black's Law Dictionary.

It will be observed that this bench warrant was issued by the court, directed to the sheriff of the county, commanding him in the name of the people of the State of Michigan to arrest the body of Richard E. Oxford and bring him forthwith before the circuit court for the county of Kent; and it was under the seal of the court, thus distinguishing it from the writ passed upon by us in *Whitman* v. *Branstrom, supra.*

The next question discussed is whether the bench warrants were processes fair upon their face, and a protection to the persons acting under them in arresting the plaintiff. Applying the definition of process that may be said to be fair upon its face, we refer to the definition in Cooley on Torts (2d Ed.), at p. 538. This language has been referred to recently in *Brown* v. *Hadwin,* 182 Mich. 491 (L. R. A. 1915B, 505), and in *Whitman* v. *Branstrom, supra.*

It appears from this record that these bench warrants were filled out by defendant Hyde. He testified that they were printed blanks, and that he inserted the written matter, which consisted of the words "contempt of court—failure to pay alimony." It was a fact, appearing from this record, that the plaintiff was then *prima facie* guilty of contempt of court— failure to pay alimony, and that defendant Hyde stated the facts in that regard. The printed form contained certain redundant matter, because no information had been filed in behalf of said people by the prosecuting

attorney of Kent county. Those words, we think, were mere surplusage in the printed form, and the gist of the charge was "contempt of court—failure to pay alimony." After a somewhat lengthy examination of this subject, we are of the opinion that the warrants for the arrest of the plaintiff were fair upon their face, and a protection to the officers making the arrests. The writs issued from a court or body having authority by law to issue processes of that nature, and there was nothing upon the face of the papers to apprise that officer that they were issued without authority; nor does it appear that they were issued without authority. It follows, we think, from what we have said, that all of the defendants were protected in making the arrests of the plaintiff on the occasions complained of in the declaration.

Whether the conduct of the defendant Berry was justified in detaining the plaintiff for the length of time he was incarcerated in the county jail under the circumstances appearing here, presents another question.

From this record it is a disputed question and may be said to be doubtful, whether the plaintiff was ever brought before the court in pursuance of the command of the writ. At all events, even if the officer was directed by the circuit judge who issued the writ, to take him to jail until such time as he could hear him, this did not justify the sheriff in holding him an unreasonable length of time. The writ did not command the sheriff to take the plaintiff before the circuit judge who signed the writ, but "before the circuit court for the county of Kent." We will take notice that there was more than one judge of that court, and there is no claim that the circuit court was not in session during the period of imprisonment. It is elementary that, even in criminal cases, when the officer has made the arrest it is his duty, as soon as possible, to bring the

party before the court according to the import of the warrant; and if the officer be guilty of unnecessary delay in so doing, it is a breach of his duty; and his duty is the same whether the arrest was made with, or without process.  He must take him before the court as soon as he reasonably can.  If the time when the arrest is made be unseasonable, as in or near the night, whereby the officer cannot attend the court, or if the party be sick or the like, the officer may secure the prisoner in a house or other place until the next day, or until such time as it may be reasonable to bring him into court.  See English cases cited in Tiffany's Crim. Law (Howell's 4th Ed.), p. 103.

This rule is applicable in cases of civil contempt, as well as in criminal contempt of court.  It is the duty of the officer who makes the arrest under warrant to exercise reasonable diligence in presenting the person arrested before the court; and it has been held repeatedly that where the officer unreasonably delays in making the arraignment, the delay amounts to false imprisoment.

In *Anderson* v. *Beck*, 64 Miss. 113 (8 South. 167), it was held that the unexplained detention of the prisoner arrested on warrant, for more than 30 days without bringing him up for examination or trial amounted to false imprisonment.  What amounts to reasonable diligence in presenting a prisoner before the court depends upon the peculiar facts in each case.  And whether a prisoner was detained for an unreasonable length of time before being presented for examination or trial is usually a question of fact to be determined upon the circumstances attending the particular arrest and detention.  The facts are here in dispute, and therefore they became questions of fact for the jury.  It follows that where all the facts are conceded, or clearly established, the question whether said detention was unreasonable is one

of law for the court. See the very fully extended note to the case of *Atchison, etc., R. Co.* v. *Hinsdell* (76 Kan. 74, 90 Pac. 800, 12 L. R. A. [N. S.] 94), 13 Ann. Cas. p. 984 *et seq.*

Recent cases sustain the well-established rule that, as a prisoner is entitled to a hearing within reasonable time after his arrest, delay for an unreasonable length of time in bringing him before the court constitutes false imprisonment. *Gomez* v. *Scanlan*, 155 Cal. 528 (102 Pac. 12); *Clark* v. *Tilton*, 74 N. H. 330 (68 Atl. 335); and see numerous other cases cited in *Keefe* v. *Hart*, 213 Mass. 476 (100 N. E. 558), as reported in Ann. Cas. 1914A, at p. 716, and note on p. 717. This right may be waived by the prisoner.

In the instant case it is not claimed that the plaintiff ever assented to any delay. While he claims that he was constantly asking for a hearing, the most that is claimed on behalf of the defendants upon that subject is that he made no request in the matter.

In *Linnen* v. *Banfield*, 114 Mich. 93, which was an action for false imprisonment against Banfield, a police officer, and others, and after approving the directed verdict as to the other defendants, this court, speaking through Justice MONTGOMERY, said:

"As to defendant Banfield the case is different. We think there was a case made for the jury on both counts. Assuming that the arrest without warrant was justified, it was the duty of arresting officers to take accused before a magistrate at as early a date as was practicable. This arrest was made on the evening of the 31st [December] and the plaintiff was detained without bail until the evening of the 2d of January. The information upon which the warrant was sworn out was all this time in the possession of the officers. We think it should not be held as a matter of law that this delay was reasonable. *Malcolmson* v. *Scott*, 56 Mich. 465. * * *

"The officers were authorized to detain the plaintiff on the charge of felony without a warrant for a rea-

sonable time only. 1 Am. & Eng. Enc. Law, p. 732; *Rohan* v. *Sawin,* 5 Cush. (Mass.) 281. Time is presumed to be of some importance to one incarcerated without process, and promptness is required when the information upon which proceedings are to be based is at hand, in order that the accused may not be deprived of the right to give bail. We do not overlook the claim that the officer was acting under the instructions of the prosecuting attorney, but we know 'of no rule which authorizes a prosecuting attorney to enlarge the authority of the arresting officer. While such instructions may bear on the good faith of the officer's acts and thus affect the question of damages, it must be borne in mind that good faith does not excuse an unauthorized arrest."

Neither does it justify an unreasonable detention and deprivation of one's liberty. There is, in other jurisdictions, an abundance of authority to the effect that an unlawful detention following a lawful arrest by a sheriff makes him a trespasser *ab initio.* But this court held in *Friesenhan* v. *Maines,* 137 Mich. 10, that an unlawful detention following a lawful arrest by a sheriff does not make him a trespasser *ab initio,* unless the original arrest was made with the intent of being used for a subsequent wrong. We think that this rule is applicable to the instant case, as we find no evidence of such intent.

Much stress is laid by appellant upon the point that the plaintiff was "incarcerated among felons," in violation of the statute already referred to. It should be borne in mind that the plaintiff never had been sentenced, and that no commitment had been issued for his detention. He was simply charged with contempt of court; and, in our opinion, not with criminal contempt. It is true that the border line between what may be termed "civil," and what "criminal," contempt is exceedingly indistinct and narrow, leaving it often a question of extreme refinement as to whether the act was one or the other. Of course, all

judgments for contempt are, in a sense, punitive, since the sentence may be fine and imprisonment in both. But here there had been no judgment pronounced. In our opinion the statute relied upon by the appellant is applicable here, and the manner in which the plaintiff was treated by the defendant Berry while in custody and where he was detained, are matters that were pertinent in the case.

There were certain cards introduced in evidence, known as the "yellow" card and the "white" card, which appeared to be instructions of the circuit judge relating to the question of probation. We think their introduction was not warranted under the notice in the pleadings, but we do not deem the question an important one.

The defendants in their evidence went far afield upon the question of the merits of the divorce suit. Save as a matter of cross-examination, as affecting the credibility of the plaintiff, we do not think that was an open question upon the trial.

In our opinion the court erred in directing a verdict in favor of all of the defendants; and the question whether the defendant Berry was guilty of an unreasonable detention in jail of the plaintiff should have been submitted to the jury under proper instructions; and the case should go back for a new trial as to the defendant Berry, for the reasons herein stated.

Judgment as to the defendants Griswold and Hyde is affirmed, with costs; and as to defendant Berry is reversed with costs, and a new trial ordered.

BIRD, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred. OSTRANDER, C. J., did not sit.