RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0315P (6th Cir.)
File Name: 03a0315p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

No. 01-1015

In re: ANTHONY STEVEN BROWN,

              *Debtor.*

_____

EASTLAND PARTNERS LIMITED PARTNERS, et al.,
       *Plaintiffs-Appellees,*

*v.*

VILLAGE GREEN MANAGEMENT COMPANY,
       *Defendant-Appellant,*

ANTHONY STEVEN BROWN, et al.,

             *Defendants.*

_____

No. 01-2500

In re: ANTHONY STEVEN BROWN,

              *Debtor.*

_____

Nos. 01-1015/2500

EASTLAND PARTNERS LIMITED PARTNERS,
       *Plaintiff-Appellant,*

*v.*

VILLAGE GREEN MANAGEMENT COMPANY,
       *Defendant-Appellee,*

ANTHONY STEVEN BROWN, et al.,

             *Defendants.*

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 97-70866—Bernard A. Friedman, District Judge.

Argued: October 18, 2002

Decided and Filed: September 3, 2003

Before: BOGGS, SUHRHEINRICH, and CLAY, Circuit
Judges.

_____

## COUNSEL

**ARGUED:** Stephen F. Wasinger, WASINGER, KICKHAM & HANLEY, Royal Oak, Michigan, Felice V. Iafrate, PUZZOULI & HRIBAR, Clinton Township, Michigan, for Defendants. David R. Parker, CHARFOOS & CHRISTENSEN, Detroit, Michigan, Mayer Morganroth, MORGANROTH & MORGANROTH, Southfield, Michigan,

for Plaintiffs.  **ON BRIEF:**  Stephen F. Wasinger, Judith Sawicki, WASINGER, KICKHAM & HANLEY, Royal Oak, Michigan, Felice V. Iafrate, PUZZOULI & HRIBAR, Clinton Township, Michigan, for Defendants.  David R. Parker, CHARFOOS & CHRISTENSEN, Detroit, Michigan, Mayer Morganroth, Jeffrey B. Morganroth, Jason R. Hirsch, MORGANROTH & MORGANROTH, Southfield, Michigan, for Plaintiffs.

-------------------

## OPINION

-------------------

CLAY, Circuit Judge.  In Case No. 01-1015, Defendant, Village Green Management Company ("Village Green"), appeals from an order entered by the district court on November 17, 2000, denying Village Green's motion for judgment notwithstanding the verdict or for new trial, following a jury verdict in favor of Plaintiffs, Eastland Partners Limited Partners, et al. (collectively "Eastland"), and against Village Green, on Eastland's breach of contract claim filed against Village Green.  In Case No. 01-2500, Eastland appeals from the district court's order entered on October 3, 2001, denying Eastland's motion for rehearing of an order declaring Anthony Steven Brown sole managing partner of Eastland.  The two cases have been consolidated on appeal, and for the reasons set forth below, we **AFFIRM** the district court's order in Case No. 01-1015; and **REVERSE** the district court's order in Case No. 01-2500.

## BACKGROUND
### Procedural History

Eastland originally filed suit against Village Green and Brown seeking to recover damages allegedly sustained as a result of Village Green disbursing monies from Eastland's reserve bank accounts to Brown without consent of Brown's co-general partner, Eric Lutz.  Thereafter, Brown filed a

petition for Chapter 7 bankruptcy, and Eastland's complaint was refiled as an adversary proceeding.  Specifically, Eastland brought the adversary proceeding against Brown, Brown's two companies, Anthony S. Brown Development Company and ASB Asset Management Company ("ASB"), and Village Green for breach of contract through negligence, fraud, misrepresentation, defalcation and breach of fiduciary duty, essentially arguing that Brown and his two companies converted funds that were to be used to pay property taxes and other reserves on behalf of Eastland, thereby causing Eastland's apartment complex to be lost in foreclosure to the mortgage holder.  Village Green moved to dismiss the complaint on the ground that Eastland did not have standing to commence the lawsuit since Eastland's sole managing general partner, JAM Associates ("JAM")—a co-partnership comprised of partners Brown and Lutz— had not authorized the lawsuit.  The district court issued an order on October 10, 1997, denying Village Green's motion to dismiss.

Village Green moved for summary judgment of the tort claims that Eastland had filed against it.  By order entered on December 7, 1998, the district court dismissed Eastland's tort claims against Village Green.  Eastland then filed a motion for clarification, asking whether the district court intended to dismiss its claims for breach of fiduciary duty and defalcation.  The district court issued an order on January 20, 1999, granting the motion.  In its order, the district court stated that all of Eastland's tort claims, including those for breach of fiduciary duty and defalcation, filed against Village Green were dismissed, and thereby allowed the matter to proceed against Village Green solely on a breach of contract claim, but against Brown and his companies on the various tort claims as well.

A jury trial was held in January of 2000, but ended in a mistrial when, after deliberating for five days, the jury could not render a verdict.  A second jury trial was held in July of 2000, after which the jury found in favor of Brown and his companies on all claims, but against Village Green on

Eastland's breach of contract claim and thereby awarded Eastland $250,000 in damages. The district court entered judgment against Village Green on August 22, 2000 in accordance with the jury verdict. Village Green then filed a motion for judgment notwithstanding the verdict or for new trial. The district court issued an order on November 17, 2000, denying the motion, and it is from the district court's order denying Village Green's motion that Village Green now appeals in Case No. 01-1015.

Following the jury verdict, Brown filed a motion for attorneys' fees and costs. The district court issued an order on November 17, 2000, granting the motion for costs, but ordered the parties to brief the issue of whether Brown could recover attorneys' fees under Eastland's Limited Partnership Agreement ("the Partnership Agreement"). Eastland asserted in its brief to the district court that under the Partnership Agreement, only JAM could seek indemnity for attorneys' fees. Brown asserted in his brief that Eastland's attorneys lacked authority to represent Eastland, citing his August 3, 2000 letter notifying the attorneys that they had not been properly authorized by Eastland to act and their right to act had been terminated. Brown also asserted that, pursuant to an agreement with Lutz, he had been the sole managing partner of JAM, and because JAM acted through him, he was entitled to indemnity for attorneys' fees. The district court issued an order on January 19, 2001, denying Brown's motion for attorneys' fees.

Village Green had also filed a motion requesting that the district court declare Brown the sole managing partner of Eastland. On April 18, 2001, the district court orally granted the motion, and further ordered that the dissolution of Eastland be supervised and conducted by Brown, although neither Brown nor Village Green had requested that Eastland be dissolved. The district court memorialized its ruling on April 19, 2001.

Eastland filed a motion for rehearing of the April 19, 2001 order on the ground that the district court had erroneously ordered the dissolution of Eastland because neither Brown nor Village Green had requested such relief, and because in ordering Eastland's dissolution the district court erroneously relied upon a Michigan statute that authorizes a court-ordered dissolution of a partnership. The district court issued an order on October 3, 2001, denying Eastland's motion, and it is from this order that Eastland now appeals in Case No. 01-2500.

### Facts

Eastland is a Michigan limited partnership created in 1984. As noted, Eastland's sole general partner is JAM, a Michigan co-partnership whose two co-partners are Brown and Lutz. Eastland's sole limited partner is Eastland Properties. Eastland Properties' limited partners are a number of individuals and entities some of whom were individual plaintiffs in this case.

Eastland was the owner of an apartment complex known as Eastland Village Apartments (the "Property"). Eastland Properties, the sole limited partner of Eastland, entered into a "Management Agreement" ("the Agreement") with Village Green on May 9, 1990 to manage the Property. The Agreement listed Eastland Properties Limited Partnership as the "owner" and Village Green Management Company as the "agent," and provided a "List of Provisions" for which Village Green was responsible such as "Disbursements from Operating (and/or) Reserve Account(s)" and "Financial and Other Reporting." (J.A. at 1415.) Also on May 9, 1990, ASB entered into a management subcontract agreement with Village Green.

The Property did not perform as projected and Eastland began experiencing cash flow difficulties in the early 1990's. In March of 1991, Eastland filed Chapter 11 bankruptcy. Eastland did not emerge from bankruptcy until November of 1992.

After emerging from bankruptcy, Brown, through ASB, assumed principal responsibility for the on-site daily management of the Property. Village Green's role changed primarily to accounting, reporting, and assisting ASB as directed by either Brown or ASB, in such matters as establishing various reserve bank accounts for Eastland. The owner of these accounts was listed as Eastland Properties Limited Partnership. Village Green issued a monthly "Cash Requirement" report to Eastland, in which was listed the cash available in the accounts, the fixed expenses which needed to be funded, and an itemization of accounts payable. Each month Village Green received and followed specific instructions from Eastland as to which creditors should be paid based on the available cash. Village Green also issued a monthly report to Eastland called a "Monthly Operations Review" which included several subparts including a "variance report." The variance report listed each of the accounts, addressed the reason for any variance between actual and budgeted amounts, and provided the amount of the variance. Lutz reviewed the monthly reports prepared by Village Green and approved the budget.

Beginning in January of 1993, Brown requested that Village Green disburse money from the accounts it held for Eastland to him. The requests were made in writing primarily by Robert Stillings, an officer of ASB. A significant number of these requests stated that the money was for a "replacement reserve" account. Village Green honored these requests and disclosed the disbursements in the Monthly Operations Review report. At the second jury trial, Terry Schwartz, the CEO of Village Green, testified that although Village Green understood that it was disbursing money to Brown, Village Green continued to record the disbursements as deposits to a replacement reserve account.

In March of 1994, after reviewing the Monthly Operations Review report, Lutz learned that Brown was withdrawing money from Eastland's accounts. Lutz notified Village Green by letter that such disbursements were prohibited by the

Partnership Agreement and the bankruptcy reorganization plan under which Eastland was operating. Lutz then contacted Brown, and Brown admitted that he did not hold the money in a replacement reserve account and claimed that he used the money instead to pay Eastland's expenses, including a debt that Eastland allegedly owed to him. Brown specifically admitted to taking all of the real estate tax escrow fund which totaled more than $700,000.

Because Eastland failed to pay its real estate taxes, Prudential Insurance filed a complaint seeking to foreclose its mortgage on the Property, and in June of 1994, Prudential purchased the Property at a foreclosure sale for $21,098,866.37. Dean Nelson, a real estate appraiser, testified on behalf of Eastland that the Property had a value of $23.5 million in 1992. Nelson projected that the Property would have a value of approximately $30 million in 2002, and did not reduce this amount to present value. However, Rodney Crawford, an accountant, testified on behalf of Village Green that a proper analysis of Nelson's future damage estimate, reduced to present value and properly accounting for all costs, would have resulted in negative equity.

At trial, the court appointed expert James McTevia to report on damages. McTevia testified that he had not determined whether there had been any wrongdoing by Brown and he assumed that none of the money disbursed by Village Green at Brown's request had been used for partnership expenses. McTevia also assumed that Eastland would have had sufficient resources, through capital infusions, to keep the Property. Based on these assumptions, McTevia testified that Eastland would have lost approximately $500,000 had the money not been diverted but instead used for partnership expenses.

## DISCUSSION

### I. Village Green's Motion for Judgment Notwithstanding the Verdict/New Trial  (Case No. 01-1015)

#### A.   Standard of Review

Village Green claims that insufficient evidence was presented upon which a reasonable jury could have found in favor of Eastland on Village Green's breach of contract claim. In a diversity action such as this, a state law standard of review is applied when a Rule 50(b) motion is based on a challenge to the sufficiency of the evidence necessary to support the jury's verdict. *See Morales v. Am. Honda Motor Co. Inc.,* 151 F.3d 500, 506 (6th Cir. 1998). The Michigan Supreme Court has explained the applicable standard as follows:

> In reviewing a trial court's failure to grant a defendant's motion for a directed verdict or judgment notwithstanding the verdict, we examine the testimony and all legitimate inferences that may be drawn in the light most favorable to the plaintiff. If reasonable jurors could honestly have reached different conclusions, the motion should have been denied. If reasonable jurors could disagree, neither the trial court nor this Court has the authority to substitute its judgment for that of the jury.

*Matras v. Amoco Oil Co.,* 385 N.W.2d 586, 588 (Mich. 1986) (footnotes omitted). Said differently, a directed verdict or judgment notwithstanding the verdict is appropriate under Michigan law only when there is no factual dispute upon which reasonable minds could differ.[1]  *Meagher v. Wayne*

---

[1] The Michigan courts use the terms "directed verdict" and "judgment notwithstanding the verdict" rather than the term "judgment as a matter of law" as used in federal court. We shall employ the term "judgment as a matter of law" as used in Rule 50 throughout this opinion.

*State Univ.*, 565 N.W.2d 401, 409 (Mich. Ct. App. 1997) (citation omitted).

In reviewing a district court's decision to deny a motion for a new trial in a diversity action, however, this Court applies federal procedural law. *See Webster v. Edward D. Jones & Co.*, L.P., 197 F.3d 815, 818 (6th Cir. 1999) (citing *Tobin v. Astra Pharm. Prod.*, 993 F.2d 528, 541 (6th Cir. 1993)). That is to say, a district court's denial of a motion for a new trial is reviewed for an abuse of discretion. *Id.* "The district court must compare the offered evidence and set aside the verdict only if it is against the clear weight of the evidence as a whole." *Id.*

#### B.   Standing Issue

As a preliminary matter, Village Green argues that because this lawsuit was not properly authorized by JAM, Eastland lacked standing to assert its breach of contract claim. Village Green argues that only JAM, as Eastland's sole managing general partner, had the authority to bring this lawsuit on behalf of Eastland, and because Brown, as co-partner of JAM, did not consent to the lawsuit, the suit could not go forward. Eastland argues that it had standing to assert its breach of contract claim since it has suffered an injury traceable to the conduct of Village Green, and because it had the capacity to sue Village Green inasmuch as Michigan law allows limited partners to sue on their own behalf as well as on behalf of the partnership. We agree with Eastland.

In *Firestone v. Galbreath*, 976 F.2d 279, 283 (6th Cir. 1992), we held that a plaintiff has standing if the complaint alleges an injury in fact traceable to the conduct of the defendant. We further held that, under Federal Rule of Civil Procedure 17(b), a plaintiff has the capacity to sue if the law of the state in which the district court is held allows the

plaintiff to litigate in federal court.[2] *Id*. The plaintiffs in *Firestone*, who were beneficiaries of an inter vivos trust created by their grandmother, brought state tort and federal racketeering claims against the trustee and the executor of their grandmother's estate on behalf of themselves individually, the family trust, and the estate. The district court dismissed the claims on the ground that the plaintiffs lacked standing to pursue those claims. *Id*. On appeal, this Court found that the plaintiffs had standing to sue because the complaint alleged an injury in fact traceable the conduct of the trustee and the executor. *Id*.

In this case, Eastland's first amended complaint alleges an injury in fact traceable to Village Green. Specifically, the complaint alleges that Eastland suffered damages in the amount of $778,000 as result of Village Green's actions associated with diverting monies to Brown. *See Firestone*, 976 F.2d at 283. Thus, having concluded that Eastland alleged an injury in fact traceable to Village Green, the next inquiry becomes whether under Michigan law, Eastland had the capacity to sue Village Green. *Id.*

In *Adell v. Sommers, Schwartz, Silver & Schwartz, P.C.*, 428 N.W.2d 26, 29 (Mich. Ct. App. 1988), the Michigan Court of Appeals recognized that pursuant to Mich. Comp. Laws § 449.2001, limited partners have the capacity to sue on their own behalf and to bring a derivative action on the behalf of the partnership for wrongs committed against the

---

[2]Federal Rule of Civil Procedure 17(b) provides in relevant part:

> The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it is organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held . . . .

Fed. R. Civ. P. 17(b).

partnership if the general partners refuse. Thus, Eastland's limited partners had the capacity to sue on their own behalf and on behalf of Eastland without the consent of both general partners, Brown and Lutz, and Village Green's contention that Eastland had no standing is without merit. *See id.*; *see also Firestone*, 976 F.2d at 283.

### C. Sufficiency of the Evidence as to Eastland's Breach of Contract Claim

Village Green argues that it did not have a contract with Eastland, but instead entered into a subcontract with ASB, which had a contract with Eastland. Village Green argues in the alternative that even if it did contract with Eastland, there was no evidence of a breach inasmuch as Village Green acted at the direction of its principal when it disbursed money to Brown, its monthly reports accurately disclosed that taxes were not paid on the Property after November 1993 but that money had been disbursed to the owner, and that the management subcontract agreement expressly provided that Village Green could not be held liable for the acts or omissions of the owner.

Eastland argues that the record indicates that Village Green entered into the Agreement with Eastland on May 9, 1990, and that the subcontract with ABS did nothing to negate Village Green's obligations to Eastland under the Agreement. Eastland goes on to argue that there was overwhelming evidence of Village Green's breach of the Agreement by way of Village Green's disbursing money to Brown upon the requests of a third person and submitting monthly reports that unambiguously misrepresented the amount of money held in the accounts, which was in contravention of the terms of the Agreement. Furthermore, Eastland maintains that Village Green took these actions at its own peril because there is no provision in the Agreement exempting Village Green from liability. We agree with Eastland.

To state a breach of contract claim under Michigan law, a plaintiff must first establish the elements of a valid contract. *See Pawlak v. Redox Corp.*, 453 N.W.2d 304, 307 (Mich. Ct. App. 1990). The elements of a valid contract in Michigan are 1) parties competent to contract, 2) a proper subject matter, 3) a legal consideration, 4) mutuality of agreement, and 5) mutuality of obligation. *Thomas v. Leja*, 468 N.W.2d 58, 60 (Mich. Ct. App. 1990). Once a valid contract has been established, a plaintiff seeking to recover on a breach of contract theory must then prove by a preponderance of the evidence the terms of the contract, that the defendant breached the terms of the contract, and that the breached caused the plaintiff's injury. *See Platsis v. E.F. Hutton & Co., Inc.*, 642 F. Supp. 1277, 1309 (W.D. Mich. 1986).

The record indicates that the "Agreement [was] made this 9th day of May 1990 by and between Eastland Properties Limited Partnership (the "Owner") and Village Green Management Company (the "Agent")[,]" wherein Village Green agreed to provide management services to Eastland in exchange for Eastland making payments to Village Green for the services. (J.A. at 1416.) Specifically, the Agreement provides:

> 1.1 APPOINTMENT AND ACCEPTANCE
> Owner [Eastland] hereby appoints Agent [Village Green] as sole and exclusive Agent of Owner [Eastland] to lease and manage the property described in paragraph 1.2 upon the terms and conditions provided herein. Agent [Village Green] accepts the appointment and agrees to furnish the services of its organization for the leasing and management of the Premises; and Owner [Eastland] agrees to pay all expenses in connection with those services.

(J.A. at 1416.) Thus, this bargained for exchange of mutuality between Eastland and Village Green satisfies Michigan's requirements for a valid contract. *See Pawlak*, 453 N.W.2d at 307. Village Green does not deny the

existence of the Agreement or that it is a valid contract under Michigan law. Rather, Village Green contends that the Agreement was between Eastland and ASB, and that Village Green had a subcontract with ASB. The record does not support Village Green's contention.

As indicated above, the Agreement clearly states the parties that entered into the Agreement—Eastland and Village Green. Although in the Signatures section of the Agreement, Brown's name appears with the name "Anthony S. Development Co., Inc." thereunder, the Signatures section of the Agreement also designates "Eastland Properties Limited Partnership" as the "Owner" and Village Green as the "Agent" for which Terry B. Schwartz signed as Chief Executive Officer. (J.A. at 1429.) Thus, the record supports a finding that reasonable minds could have found that a contract between Eastland and Village Green existed. *See Pawlak*, 453 N.W.2d at 307. As a result, the terms of the Agreement and whether sufficient evidence was presented for a reasonable jury to have found that Village Green breached the terms thereby causing Eastland to suffer an injury are the next relevant inquiries. *See Platsis*, 642 F. Supp. at 1309; *Matras*, 385 N.W.2d at 588.

As to the terms of the Agreement, among other things, Village Green was required to collect all accounts receivable in connection with the management and operation of the Property, deposit and maintain such funds in reserve bank accounts, pay all expenses and costs necessary for the proper management and operation of the Property, and provide Eastland with accurate and complete monthly reports of costs, receipts and disbursements. Eastland brought forth evidence that Village Green breached these obligations by way of testimony and documentation that Village Green disbursed money to Brown upon the requests of a third person unauthorized to make such requests and provided monthly reports to Eastland that did not accurately reflect the amount of money held in the accounts. Eastland also brought forth evidence that it suffered an injury as a result of Village

Green's breach of its obligations under the Agreement by way of the foreclosure and sale that took place following Eastland's failure to pay its property taxes.

Village Green argues that because Brown's knowledge, as general partner, is imputed to Eastland, Eastland had knowledge of the disbursements made to Brown and therefore cannot be allowed to complain that Village Green acted improperly, i.e., evidence of Village Green's actions upon which Eastland relies in support of its breach of contract claim could not be considered in determining whether a breach occurred because Eastland was aware of Village Green's actions in this regard.

Eastland argues that because Brown acted outside the ordinary course of business when he withdrew money from Eastland's accounts for his personal use, Brown's knowledge cannot be imputed to Eastland. In support of its contention, Eastland points out that Brown's actions were contrary to the Partnership Agreement and the Bankruptcy Plan of Reorganization, and relies upon Michigan's Uniform Partnership Act (the "Act"), Mich. Comp. Laws Ann. § 449.1 *et seq*.

Specifically, Eastland relies upon sections §§ 449.9(1), 449.12, and 449.13 of the Act in support of its claim that the acts of an individual partner outside the ordinary course of business of the partnership or acts of fraud cannot impute knowledge to or liability on the partnership. Section 9 of the Act provides in relevant part:

> Every partner is an agent of the partnership *for the purposes of its business*, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in *the usual way the business of the partnership*, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is

> dealing has knowledge of the fact that he has no such authority.

Mich. Comp. Laws Ann. § 449.9(1) (emphasis added). Section 12 of the Act provides:

> Notice to any partner of any matter relating to the partnership affairs, and the knowledge of the partner acting in the particular matter, acquired while a partner or then present to his mind, and the knowledge of any other partner who reasonably could and should have communicated it to the acting partner, operates as notice to or knowledge of the partnership, *except in the case of fraud on the partnership committed by or with the consent of that partner*.

Mich. Comp. Laws Ann. § 449.12 (emphasis added). And Section 13 of the Act provides:

> Where, by any wrongful act or omission of any partner *acting in the ordinary course of the business of the partnership*, or with the authority of the co-partners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.

Mich. Comp. Laws Ann. § 449.13 (emphasis added).

In order to determine whether Brown acted outside the ordinary course of business when he withdrew money from Eastland's accounts for his personal use, we must examine the Partnership Agreement and the Bankruptcy Plan. Section 3.02 of the Partnership Agreement provides in relevant part:

> The Operating Cash Flow of the Partnership, for each fiscal year of the Partnership, to the extent (and only to the extent) that the General Partner determines, in its sole and absolute discretion, that the Operating Cash Flow of

the Partnership for such fiscal year is not required for Partnership purposes and is available for distribution to the Partners, shall be distributed to the Partners. All Operating Cash Flow that is distributed to the Partners shall be distributed to, and allocated between, the Partners, 1% to the General Partner and 99% to the Limited Partner.

(J.A. at 1546.) Section 4.05 of the Partnership Agreement provides:

The General Partner (and Affiliates of the General Partner) shall have the right to contract and otherwise deal with the Partnership and the Real Estate Partnership with respect to the sale or lease of real and/or personal property, the rendition of services, the lending of money and for other purposes, and to receive compensation, fees, commissions, interest and other forms of consideration in connection therewith as the General Partner may determine, without being subject to claims for self dealing.

(J.A. at 1552.)

In addition, the Bankruptcy Plan provides in relevant part that Eastland "shall utilize all Excess Cash Flow, if any, as and when it becomes available to pre-pay the outstanding balance owing to the holders of allowed claims within Class 7 until such claims have been paid in full." (J.A. at 2033.)

Because Eastland had no excess cash flow available for disbursement to partners in 1994, Brown was not entitled to any disbursements and he acted outside the ordinary course of business when he withdrew money from Eastland's accounts for his personal use without the consent of his co-general partner, Lutz. Furthermore, had excess cash flow been available for disbursement to partners, Brown was at most entitled to 1% of the excess, and by withdrawing more than $700,000 from Eastland's accounts, Brown exceeded the 1%

cap. Finally, these is no evidence on the record, such as a loan agreement, to indicate that Brown had loaned Eastland more than $700,000 and was entitled to repayment despite the lack of excess cash flow. Thus, Brown had neither actual nor implied authority to withdrew money from Eastland's accounts for his personal use.[3]

Moreover, Eastland cannot be held to have affirmed Brown's unauthorized actions since there is no evidence on the record to indicate that Eastland received any direct benefit from such actions. *See City Nat'l Bank of Detroit v. Westland Towers Apartments*, 393 N.W.2d 554, 556-57 (Mich. Ct. App. 1986) (holding that a partnership was not liable for a promissory note signed by a partner because the partnership received no direct benefit from the partner's unauthorized act).

We therefore are not persuaded by Village Green's arguments and conclude that Eastland presented sufficient evidence for a reasonable jury to have found that a contract existed between Eastland and Village Green, and that Village Green breached the terms of the contract to the detriment of Eastland. *See Platsis*, 642 F. Supp. at 1309. Thus, the district court did not err in denying Village Green's motion for judgment as a matter of law. *See Matras*, 385 N.W.2d at 588. And, because the evidence on the record as a whole does not outweigh the evidence proffered by Eastland in support of its breach of contract claim, we also conclude that the district court did not abuse its discretion in denying Village Green's motion for a new trial. *See Webster*, 197 F.3d at 818.

---

[3] In its reply brief, Village Green argues for the first time that it did not have a duty to use reasonable diligence to determine whether Brown was acting within the scope of his authority as a general partner when he requested the disbursal of money from Eastland's accounts. We will not consider this argument because it was raised for the first time in Village Green's reply brief. *See Wright v. Holbrook*, 794 F.2d 1152, 1156-157 (6th Cir. 1986) (holding that arguments raised for the first time in a reply brief will not be considered on appeal).

### D. Inconsistent Verdict Claim

As an alternative claim regarding the jury's verdict in favor of Eastland on its breach of contract claim, Village Green argues that the jury's verdict in favor of Brown exonerated Village Green. Said differently, Village Green argues that because the jury found that Brown was not liable, its verdict finding that Village Green breached the terms of the Agreement by following Brown's instructions was inconsistent.

We are not persuaded by Village Green's argument in this regard because, as Eastland points out, at most the jury was allowed to decide that Brown had not committed intentional and malicious fraud by clear and convincing evidence. The jury was not permitted to decide whether Brown's actions amounted to other torts, including innocent misrepresentation, breach of contract, or negligent misrepresentation because Brown's pending bankruptcy precluded such a determination. Thus, the jury's verdicts in favor of Brown but against Village Green were consistent since Village Green was shown to have breached the management agreement by its own actions. *See, e.g., Morales*, 151 F.3d at 509 (noting that when reviewing an inconsistent verdict claim, this Court must "look for a reasonable way" to view the case). We therefore conclude that the district court did not abuse its discretion in denying Village Green's motion for a new trial on this basis as well. *See id.* at 511.

### E. Sufficiency of the Evidence as to the Jury's Award of Damages

Village Green argues that the jury's award of damages was not supported by the evidence since Eastland did not prove that Village Green caused it any damages with a reasonable degree of certainty and failed to reduce the alleged damages to present value as of the date of breach. Village Green also argues that the jury's award of damages constituted an improper compromise verdict.

Eastland argues that ample evidence supported the jury's award of damages since Eastland presented evidence that had Village Green properly placed the funds in a replacement reserve account, as Village Green represented it had done, the taxes would have been paid in full before the date of foreclosure; that had Village Green provided accurate and complete monthly reports of the Property's financial state, Eastland would have been able to take corrective action to prevent foreclosure; and that the money disbursed to Brown by Village Green was the precise money which would have been used to pay taxes on the Property. Eastland notes that McTevia, Nelson, and Lutz all testified that the loss of the Property was a direct result of Village Green's breaches of contract.

To recover for damages under a breach of contract claim, a plaintiff must prove that the damages arose naturally from the breach or were in contemplation of the parties at the time the contract was made. *Held Constr. Co., Inc. v. Mich. Nat'l Bank of Detroit*, 335 N.W.2d 8, 10 (Mich. Ct. App. 1983). Lost profits resulting from a breach of contract may be considered by a jury in determining damages. *Lorenz Supply Co. v. Am. Standard, Inc.*, 300 N.W.2d 335, 340 (Mich. Ct. App. 1980). However, lost profits must be proven with a reasonable degree of certainty and cannot be based solely on conjecture and speculation. *Id.* A jury's award of lost profits must be reduced to present value. *Coger v. Mackinaw Prods. Co.*, 210 N.W. 2d 124, 130-31 (Mich. Ct. App. 1973), *rev'd on other grounds*, *Horen v. Coleco Indus., Inc.*, 426 N.W. 2d 794 (1988).

The record indicates that Eastland presented sufficient evidence to support the jury's award of damages. McTevia, Nelson, and Lutz all testified that the loss of the Property arose naturally from Village Green's breaches of contract, Nelson testified as to Eastland's lost profits in the Property, based on normal real estate market conditions, and the district court instructed the jury to reduce damages for lost profits to present value. Furthermore, there is no evidence of juror

misconduct to support Village Green's argument that the jury's award of damages constituted an improper compromise verdict.[4]

## F.   Summary

Sufficient evidence was presented for a reasonable jury to conclude that Village Green breached the terms of its Agreement with Eastland and that Eastland suffered damages in the amount awarded by the jury, and the verdict was not inconsistent or against the great weight of the evidence.

## II.   Village Green's Motion Requesting that Brown be Declared Sole Managing Partner of Eastland (Case No. 01-2500)

Eastland argues that the district court abused its discretion in denying its motion for rehearing regarding the court's order granting Village Green's motion to declare Brown Eastland's sole managing partner. Eastland contends that Village Green did not have standing to bring such a motion, that even if Village Green did have standing, the district court went beyond the relief sought by Village Green when the court ordered the dissolution of Eastland under Brown's control and supervision, and that it is inequitable to declare Brown to be Eastland's sole managing partner inasmuch as Brown has assigned all of the rights in the management of Eastland to Village Green, and Village Green will therefore simply negotiate the judgment debt that it owes to Eastland.

---

[4]In its statement of issues presented, Village Green also raises the issue of whether the district court erred in permitting a witness to offer opinion testimony about ultimate legal issues. We will not consider this issue because Village Green failed to raise any argument in support of it. *See Bickel v. Korean Air Lines Co. Ltd.*, 96 F.3d 151, 153 (6th Cir. 1990) (holding that issues must be raised in statement of issues presented and argued in the legal brief to be considered on appeal).

## A.   Standard of Review

We review a district court's denial of a motion for rehearing for an abuse of discretion. *Curry v. Scott*, 249 F.3d 493, 503 (6th Cir. 2001). An abuse of discretion occurs when the district court relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard. *Southward v. S. Cent. Ready Mix Supply Corp.*, 7 F.3d 487, 492 (6th Cir. 1993).

## B.   Analysis

We agree with Eastland that the district court abused its discretion in denying Eastland's motion to reconsider its order declaring Brown sole managing partner of Eastland for the purpose of supervising and implementing the dissolution of Eastland. It is clear that in seeking to declare Brown sole managing partner of Eastland, Village Green actually was seeking the dissolution of JAM and a declaration that Brown have management control over JAM, because this would allow for the dissolution of Eastland without Lutz's consent inasmuch as Brown and Lutz were co-partners in JAM. However, the district court had no authority to do so because neither Brown nor Lutz filed a motion requesting a court-ordered dissolution of JAM.

Village Green acknowledged that the JAM partnership agreement was controlled by the Act, and the Act provides the circumstances under which a court may order the dissolution of a co-partnership while specifically stating that only a "partner" may apply for dissolution of the partnership. *See* Mich. Comp. Laws Ann. § 449.32. Thus, only Brown or Lutz could move to have their partnership in JAM dissolved, thereby making Village Green's efforts to do so by way of its motion to declare Brown sole managing partner of Eastland without a basis in Michigan law. Indeed, the district court relied on Mich. Comp. Laws Ann.§ 449.32 in ordering the dissolution of Eastland; however, it is clear that the court had

no authority to do so, particularly where Eastland is a limited partnership.

In addition, although § 449.1802 of the Act provides authority for the court to order dissolution of a limited partnership such as Eastland, the district court had no basis to order the dissolution of Eastland under § 449.1802 in this case because no partner of Eastland sought dissolution, and neither Brown personally nor Village Green had the authority to do so. Thus, although § 449.1802 provides a legal basis upon which the district court could have ordered the dissolution of Eastland, the court would have been without authority to do so under these facts.

## C.  Summary

The district court abused its discretion in denying Eastland's motion to reconsider the order declaring that Brown had sole managing authority over Eastland where the court had no authority to grant Village Green's motion.

## CONCLUSION

For the forgoing reasons, we **AFFIRM** the district court's order in Case No. 01-1015; and **REVERSE** the district court's order in Case No. 01-2500, and **REMAND** with instructions that the district court either appoint a neutral third-party on behalf of Eastland to deal with Village Green, or establish an escrow subject to further order as the district court proceeds to determine the rights and remedies of any party who has an interest in Eastland's assets.