CITY NATIONAL BANK OF DETROIT v WESTLAND TOWERS
APARTMENTS

Docket No. 82280. Submitted January 7, 1986, at Detroit. Decided
April 17, 1986.

William B. Risman and others and Charles Granader and others
formed Westland Towers Apartments, a copartnership, for the
purpose of constructing an apartment project. As part of the
financing of that project, the partnership secured from the City
National Bank of Detroit (CNB) an irrevocable letter of credit in
the amount of $250,947. This letter of credit was placed in the
hands of the mortgagee, J. M. Prentice Mortgage Company, in
accordance with the security requirements specified by the
insurer of the mortgage, the Federal Housing Administration.
When the completion date of the project was delayed, William
Risman, one of the managing partners, sought an extension of
the expiration date of the letter of credit. City National Bank
agreed to extend the letter of credit; however, the Granader
group refused to ratify the extension. William Risman thereaf-
ter executed the amendment to the letter of credit on behalf of
the partnership. The letter of credit was subsequently trans-
ferred to Government National Mortgage Association (GNMA)
which issued two sight drafts against the letter of credit. The
proceeds were applied by GNMA to amounts owed by Westland
for mortgage interest, insurance premiums and taxes. CNB
sought reimbursement for the letter of credit, but both the
partnership and the individual partners refused to make such
reimbursement. The bank brought an action in Oakland Circuit
Court against the partnership, the individual partners and the
spouses of the partners seeking reimbursement on the letter of

REFERENCES

Am Jur 2d, Agency §§ 180 et seq., 189, 194-196.

Am Jur 2d, Appeal and Error § 991.

Am Jur 2d, Letters of Credit and Credit Cards §§ 1, 3, 5.

What is a letter of credit under UCC §§ 5-102, 5-103. 44 ALR4th
172.

Construction and effect of UCC Art 5, dealing with letters of credit.
35 ALR3d 1404

See also the annotations in the ALR3d/4th Quick Index under
Ratification.

credit. James S. Thorburn, J., on stipulated facts, granted defendants' motion for summary judgment. Plaintiff appealed. The Court of Appeals, in an unpublished opinion, remanded to the trial court for additional findings of fact. Docket No. 78-3628, decided September 28, 1979. On remand, the trial court issued an amended opinion and again entered judgment in favor of defendants. Plaintiff appealed and the Court of Appeals affirmed the judgment for defendants, 107 Mich App 213 (1981). Plaintiff sought leave to appeal to the Supreme Court. The Supreme Court denied leave to appeal but reversed the judgment of the Court of Appeals with respect to the dismissal of the plaintiff's claim to recovery on the theory of unjust enrichment and remanded to the circuit court for reconsideration of the unjust enrichment issue, 413 Mich 938 (1982). The circuit court again entered a judgment of no cause of action in favor of defendants, and plaintiff appealed. *Held:*

1. An act of an agent which exceeds his actual or apparent authority may still bind the principal if the principal ratifies it. Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him. Affirmance is either a manifestation of an election by one on whose account an unauthorized act has been done to treat the act as authorized, or conduct by him justifiable only if there were such an election. The receipt by a principal with knowledge of the facts of retention by a principal with knowledge of the facts and before he has changed his position of something to which he is not entitled unless an act purported to be done for him were affirmed and to which he makes no claim except through such act constitutes an affirmance unless at the time of the receipt of retention he repudiates the act, whereupon his receipt or retention constitutes an affirmance at the election of the other party to the transaction. None of the benefits which both sides stipulated Westland received or retained meet the requirements of §§ 98 and 99 of Restatement Agency, 2d, such that the receipt or retention of those benefits would constitute affirmance. The only alleged benefit that resulted from Risman's act, the avoidance of likely foreclosure, was never stipulated to be a benefit to the partnership. The circuit court did not err in finding no cause of action against the plaintiff based on ratification by affirmance.

2. There are three distinct contracts implicated in a letter of credit transaction: one is between the issuer and its customer; the second is between the issuer and the beneficiary; the third

is between the customer and the beneficiary. A letter of credit is essentially a contract between the issuer and the beneficiary and is recognized as independent of the underlying contract between the customer and the beneficiary. The issuer is under a duty to honor the drafts or demands for payment which in fact comply with the terms of the credit without reference to their compliance with the terms of the underlying contract. The duty of the issuer to honor where there is factual compliance with the terms of the credit is also independent of any instructions from its customer once the credit has been issued and received by the beneficiary. CNB paid GNMA pursuant to its contractual obligations to Prentice, which were subsequently transferred to GNMA. There was no mistake of fact underlying CNB's contractual relationship with Prentice and GNMA. There was a letter of credit issued to Prentice as the beneficiary and CNB extended its obligation to honor the letter of credit prior to its expiration. This extension of obligation was not based on any mistake of fact regarding Risman's authority to bind Westland. Risman did not attempt to bind Westland until one week after the letter of credit would have expired. When CNB extended a letter of credit, it did not have any legitimate "expected exchange" because Westland had not yet agreed to an extension. There was a separate agreement between CNB and Westland such that CNB would issue a letter of credit and Westland would be liable to reimburse CNB for any money properly paid on the letter of credit. That agreement expired on May 3, 1975. There may have been a mistake of fact regarding whether Westland extended its obligation to pay on May 9, 1975, when Risman signed the request for an extension of the letter of credit. However, CNB did not pay GNMA pursuant to its agreement with Risman or Westland. CNB created or extended a separate obligation with Prentice on April 25, 1975, to pay pursuant to the letter of credit which was later transferred to GNMA. CNB paid GNMA pursuant to this separate obligation. CNB was mistaken as to the existence of a contract with Westland because CNB dealt with a purported agent, Risman, who had no power to bind Westland. Therefore, if CNB had made a payment pursuant to its agreement with Risman, Westland might be held accountable for restitution if the money had come into its hands. However, CNB made payment pursuant to a separate and distinct agreement with Prentice. Therefore Westland is not liable for restitution.

3. The prior holdings of the Court of Appeals on other issues in this case are subject to the law of the case doctrine.

Affirmed.

1. AGENCY — RATIFICATION — AFFIRMANCE.

An act of an agent which exceeds his actual or apparent authority may still bind the principal if the principal ratifies it; ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him; affirmance is either a manifestation of an election by one on whose account an unauthorized act has been done to treat the act as authorized, or conduct by him justifiable only if there were such an election.

2. AGENCY — RATIFICATION — AFFIRMANCE — RECEIPT OR RETENTION OF BENEFIT.

The receipt by a principal with knowledge of the facts or retention by a principal with knowledge of the facts and before he has changed his position of something to which he is not entitled unless an act purported to be done for him were affirmed and to which he makes no claim except through such act constitutes an affirmance unless at the time of the receipt or retention he repudiates the act, whereupon his receipt or retention constitutes an affirmance at the election of the other party to the transaction.

3. CONTRACTS — LETTERS OF CREDIT.

There are three distinct contracts implicated in a letter of credit transaction: one is between the issuer and its customer; the second is between the issuer and the beneficiary; the third is between the customer and the beneficiary.

4. CONTRACTS — LETTERS OF CREDIT — UNIFORM COMMERCIAL CODE.

A letter of credit is essentially a contract between the issuer and the beneficiary and is recognized as independent of the underlying contract between the customer and the beneficiary; the issuer is under a duty to honor the drafts or demands for payment which in fact comply with the terms of the credit without reference to their compliance with the terms of the underlying contract; the duty of the issuer to honor where there is factual compliance with the terms of the credit is also independent of any instructions from its customer once the credit has been issued and received by the beneficiary (MCL 440.5114; MSA 19.5114).

5. JUDGMENTS — APPEAL — LAW OF THE CASE.

The decision of the Court of Appeals, where the Supreme Court denied leave to appeal but reversed the Court of Appeals on

one issue, becomes the final adjudication subject to the law of the case doctrine except as to the issue reversed.

*Jaffe, Snider, Raitt & Heuer, P.C.* (by *Brian G. Shannon* and *Jeffery G. Heuer*), for plaintiff.

*Jerome C. Gropman & Associates, P.C.* (by *Jerome C. Gropman*), for defendant Westland Towers Apartments.

*Tucker, Barbour & Mack, P.C.* (by *Milton L. Mack*), for defendants Risman and Horace.

*Liberson & Bock, P.C.* (by *William I. Liberson*), for defendants Granader.

Before: T. M. BURNS, P.J., and BEASLEY and R. M. PAJTAS,* JJ.

PER CURIAM. The facts of this case are set forth in *City National Bank of Detroit v Westland Towers Apartments,* 107 Mich App 213; 309 NW2d 209 (1981). Briefly stated, Westland Towers Apartments (Westland), a copartnership, was formed to construct a low- to moderate-income apartment project. The partnership was composed of two families, the Rismans (which included the Horaces) and the Granaders. The partnership agreement required a representative from each family to sign any agreement for it to be binding on the partnership. City National Bank of Detroit (CNB) had a copy of the partnership agreement.

The apartment project was to be financed by a nonrecourse mortgage loan insured by the Federal Housing Administration and supplied by J. M. Prentice Mortgage Company. However, CNB purchased ninety-seven percent participation in the loan and supplied nearly all of the funds. In order

* Circuit judge, sitting on the Court of Appeals by assignment.

to obtain FHA insurance, Westland was required to supply additional security. This additional security took the form of letters of credit issued by CNB. On November 3, 1972, Westland delivered a request to issue letter of credit DI-211 signed by Charles Granader and Donald E. Horace. At the same time, each individual partner signed a guarantee of Commercial Letter of Credit Liability covering letters DI-208 through DI-211. In reliance on the guarantees of liability, CNB issued the four letters of credit. DI-211, a letter of credit for $250,947, was signed by Donald Horace and Charles Granader and then delivered to Prentice.

In preparation for the "final endorsement," Prentice requested that letter of credit DI-211 be extended. It was due to expire on May 3, 1975. On April 25, 1975, CNB informed Prentice that DI-211 would be extended. In reliance on this statement, Prentice did not present a sight draft against DI-211 before May 3, 1975.

On May 8, 1975, the partnership's attorney met with the attorney for the Granaders and the attorney for the Rismans along with counsel for the Department of Housing and Urban Development at HUD's Detroit offices to close the final endorsement. Due to unspecified irreconcilable differences between the Rismans and the Granaders, the Granaders' attorney, Jerome Gropman, walked out of the meeting. Later that day Gropman met with CNB's attorney and negotiated a letter of extension which Gropman said he would advise the Granaders to sign. However, the Granaders never signed the letter of extension. On May 9, 1975, William Risman, for himself and by power of attorney for Robert Risman, signed a letter requesting that the letter of credit be extended. William Risman also signed a promissory note for the letter of credit. On May 9, 1975, CNB delivered an amended letter

of credit purporting to extend the expiration of the previous letter of credit from May 3, 1975, to December 1, 1977. Although the extension was executed on May 9, 1975, it was dated May 3, 1975. On May 27, 1975, Prentice transferred DI-211 to the General National Mortgage Association (GNMA). CNB then received and paid sight drafts from GNMA against the letter of credit totaling $250,947. CNB made demand upon all of the defendants for reimbursement but all of the defendants refused to reimburse CNB. Thus the instant lawsuit was commenced.

This case has been decided three times in the circuit court on stipulated facts, always in favor of the defendants. Subsequent to this Court's decision in 1981, the Supreme Court remanded the case to the circuit court for reconsideration of the unjust enrichment issue and cited Restatement Restitution, § 15, Comment f, p 66, and Restatement Agency, 2d, §§ 98 and 99. 413 Mich 938 (1982). In all other respects leave to appeal was denied. Upon remand, the circuit court once again entered a judgment of no cause of action in favor of defendants and against plaintiff. Once again, plaintiff appeals as of right and, once again, we affirm.

We first discuss ratification and affirmance, the definitions of which are found in Restatement Agency, 2d, §§ 82 and 83, and adopted by the Supreme Court:

> When an agent purporting to act for his principal exceeds his actual or apparent authority, the act of the agent still may bind the principal if he ratifies it. The Restatement of Agency (2d), § 82, defines ratification thusly:
> "Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby

the act, as to some or all persons, is given effect as if originally authorized by him."
"Affirmance" is defined in section 83 of the Restatement:

"Affirmance is either

"(a) a manifestation of an election by one on whose account an unauthorized act has been done to treat the act as authorized, or

"(b) conduct by him justifiable only if there were such an election." [*David v Serges*, 373 Mich 442, 443-444; 129 NW2d 882 (1964).]

In this case, Westland was the principal and William Risman the agent. According to this Court's prior opinion, the elements were met for ratification. Whether there was "conduct by [Westland] justifiable only if there were such an election," pursuant to § 83(b), is the issue in dispute. The Supreme Court directed the circuit court's attention to §§ 98 and 99 of the Restatement to resolve this issue:

Section 98. Receipt of Benefits as Affirmance.

The receipt by a purported principal, with knowledge of the facts, of something to which he would not be entitled unless an act purported to be done for him were affirmed, and to which he makes no claim except through such act, constitutes an affirmance unless at the time of such receipt he repudiates the act. If he repudiates the act, his receipt of benefits constitutes an affirmance at the election of the other party to the transaction.

Section 99. Retention of Benefits as Affirmance.

The retention by a purported principal, with knowledge of the facts and before he has changed his position, of something which he is not entitled to retain unless an act purported to be done on his account is affirmed, and to which he makes no claim except through such act, constitutes an affirmance unless at the time of such retention he

repudiates the act. Even if he repudiates the act, his retention constitutes an affirmance at the election of the other party to the transaction.

The circuit court held for defendants because it was not Westland who received and obtained the direct benefits but GNMA. Our analysis shows that none of the benefits which both sides stipulated Westland received or retained meet the requirements of §§ 98 and 99 such that the receipt or retention of those benefits would constitute affirmance. Most of the benefits were not related to Risman's "act purported to be done" for Westland. Westland's claim to tax benefits was not through Risman's act but through the tax code provisions related to partnership losses. The only alleged benefit that resulted from Risman's act, the avoidance of likely foreclosure, was never stipulated to be a benefit to the partnership. The circuit court did not err in finding no cause of action against the plaintiff based on ratification by affirmance.

The second issue we review is that of unjust enrichment. The Supreme Court directed the circuit court to consider Restatement Restitution, § 15:

> Section 15. MISTAKEN BELIEF IN EXISTENCE OF CONTRACT WITH PAYEE.
>
> A person is entitled to recover money which he has paid another pursuant to the terms of the supposed contract with or offer from the other which, because of the payor's mistake of fact as to the existence of consent, of consideration or of a required formality, he erroneously believed to exist, if he does not get the expected exchange.

The Supreme Court specifically cited Restatement Restitution, § 15, p 66, which states in part:

> f. *Where agent has no power to bind.* Frequently

> a person is mistaken as to the existence of a contract with another because he deals with a purported agent who has no power to bind the other. In such case, if what he pays comes to the hands of the purported principal the transferor can recover the sum so paid unless such principal ratifies.

Thus, the relevant question is whether CNB paid another pursuant to the terms of the supposed contract with or offer from the other which, because of CNB's mistake of fact regarding Risman's authority to bind Westland, CNB erroneously believed to exist.

There are three distinct contracts implicated in a letter of credit transaction. The first is between the issuer (CNB) and its customer (Westland). The second is between the issuer (CNB) and the beneficiary (Prentice, then GNMA). The third is between the customer (Westland) and the beneficiary (Prentice, then GNMA). *United Technologies Corp v Citibank, NA,* 469 F Supp 473, 477 (SD NY, 1979); *Easton Tire Co, Inc v Farmers & Merchants Bank,* 642 SW2d 396, 398 (Mo App, 1982). The obligations created by these contracts are separate and distinct. As stated in the Official Uniform Commercial Code Comment to UCC 5-114:

> 1. The letter of credit is essentially a contract between the issuer and the beneficiary and is recognized by this Article as independent of the underlying contract between the customer and the beneficiary (See Section 5-109 and Comment thereto). In view of this independent nature of the letter of credit engagement, the issuer is under a duty to honor the drafts or demands for payment which in fact comply with the terms of the credit without reference to their compliance with the terms of the underlying contract. . . . The duty of the issuer to honor where there is factual compli-

ance with the terms of the credit is also independent of any instructions from its customer once the credit has been issued and received by the beneficiary. See Section 5-106.

See also MCL 440.5114; MSA 19.5114.

The parties have failed to separately consider the separate agreements and thus confused their analysis of the facts in this case. Returning to the language of the Restatement, CNB paid GNMA pursuant to its contractual obligations to Prentice, which were subsequently transferred to GNMA. There was no mistake of fact underlying CNB's contractual relationship with Prentice and GNMA. There was a letter of credit issued to Prentice as the beneficiary and CNB extended its obligation to honor the letter of credit prior to its expiration. This extension of obligation was not based on any mistake of fact regarding Risman's authority to bind Westland. Risman did not attempt to bind Westland until two weeks later, one week after the letter of credit would have expired. When CNB extended a letter of credit, it did not have any legitimate "expected exchange" because Westland had not yet agreed to an extension.

There was a separate agreement between CNB and Westland such that CNB would issue a letter of credit and Westland would be liable to reimburse CNB for any money properly paid on the letter of credit. That agreement expired on May 3, 1975. There may have been a mistake of fact regarding whether Westland extended its obligation to pay on May 9, 1975, when Risman signed the request for an extension of DI-211. However, CNB did not pay GNMA pursuant to its agreement with Risman or Westland. CNB created or extended a separate obligation with Prentice on April 25, 1975, to pay pursuant to the letter of credit which was later

transferred to GNMA. CNB paid GNMA pursuant to this separate obligation.

In the language of Comment f to Restatement Restitution, § 15, CNB was "mistaken as to the existence of a contract with another [Westland] because he [CNB] deal[t] with a purported agent [Risman] who ha[d] no power to bind the other [Westland]." Therefore, if CNB had made a payment pursuant to its agreement with Risman, Westland might be held accountable for restitution if the money had come into its hands. However, CNB made payment pursuant to a separate and distinct agreement with Prentice. Therefore Westland is not liable for restitution.

What happened in this case is that CNB extended its obligation to Prentice without first obtaining any corresponding agreement from Westland. We refuse to hold Westland liable for CNB's negligent banking practices simply because GNMA applied the $250,947 to Westland's mortgage obligations. Restatement Restitution, § 15, p 66, offers no rationale for holding Westland liable for CNB's negligent extension of obligation to pay Prentice on letter of credit DI-211.

Plaintiff has raised two other issues in its brief on appeal. The first concerns this Court's 1981 opinion regarding its interpretation of the Uniform Partnership Act in holding that CNB knew that William Risman did not have authority to bind the partnership and therefore CNB could not recover from Westland on the letter of credit. The second concerns this Court's 1981 decision in holding that William Risman was not personally responsible on the letter of credit for failure to bind the partnership.

The Supreme Court denied leave to appeal but reversed this Court in part on the issue of unjust enrichment. Since the application for leave to

appeal was denied, the decision of this Court became the final adjudication, except as to the issue of unjust enrichment. GCR 1963, 853.2(2), now MCR 7.302, subds (A), (C), (D), and (F). Defendants correctly argue that this Court should not reconsider its prior opinion based on the "law of the case" doctrine:

> The law of the case doctrine dispenses with the need for this Court to again consider legal questions determined by our prior decision and necessary to it. As generally stated, the doctrine is that if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same. *Corporation & Securities Comm v American Motors Corp,* 379 Mich 531; 152 NW2d 666 (1967); *Palazzolo v Sackett,* 254 Mich 289; 236 NW 786 (1931); *American Ins Co of Newark v Martinek,* 216 Mich 421; 185 NW 683 (1921); *Allen v Michigan Bell Telephone Co,* 61 Mich App 62; 232 NW2d 302 (1975); *Topps-Toeller, Inc v Lansing,* 47 Mich App 720; 209 NW2d 843 (1973). [*CAF Investment Co v Saginaw Twp,* 410 Mich 428, 454; 302 NW2d 164 (1981).]

Plaintiff does not cite any new facts but seeks reinterpretation of law previously construed in this Court's 1981 opinion. Reconsideration by this Court is barred by the "law of the case" doctrine. Decisions of this Court are final except as reviewed by the Supreme Court. GCR 1963, 800.4, now MCR 7.201(D). Case law and court rules clearly state that these issues are not reviewable.

Affirmed.