# STATE OF MICHIGAN

# COURT OF APPEALS

BARBARA BAKER,

        Plaintiff-Appellee,

v

VAN BUREN CHARTER TOWNSHIP and
SERGEANT DONOVAN MCCARTHY,

        Defendants,

and

LIEUTENANT CHARLES BAZZY and
OFFICER JASON TRONT,

        Defendants-Appellants.

UNPUBLISHED
March 20, 2018

No. 336324
Wayne Circuit Court
LC No. 16-006397-CZ

---

BARBARA BAKER,

        Plaintiff-Appellee,

v

VAN BUREN CHARTER TOWNSHIP,
LIEUTENANT CHARLES BAZZY, and
OFFICER JASON TRONT,

        Defendants-Appellants,

and

SERGEANT DONOVAN MCCARTHY,
SERGEANT GUELI, and JASON WRIGHT,

        Defendants.

No. 336529
Wayne Circuit Court
LC No. 16-006397-CZ

---

Before: GLEICHER, P.J., and BOONSTRA and TUKEL, JJ.

PER CURIAM.

-1-

Barbara Baker filed suit after she was arrested for domestic violence against her sister, Kathleen McFadden. The circuit court summarily dismissed Baker's claims against the township and Sergeant Donovan McCarthy on governmental immunity grounds. The court should have dismissed Baker's intentional tort claims against Lieutenant Charles Bazzy and Officer Jason Tront pursuant to MCR 2.116(C)(7) and (10) as well. In Docket No. 336324, we reverse the lower court's order in that regard.

Following the circuit court's resolution of defendants' summary disposition motion, the court permitted Baker to file a second amended complaint, clarifying her intentional tort counts, adding a gross negligence claim against Bazzy, including a respondeat superior/ratification count against the township, and naming two additional public officials as defendants. As the claims against Bazzy, Tront, and the township were futile, we reverse that order in part and remand for further proceedings in Docket No. 336529.

## I. BACKGROUND

On September 15, 2015, McFadden attempted to visit her elderly father who lived with her sister, Baker. By all accounts, including Baker's, Baker grabbed McFadden by the arm and escorted her out of the house. McFadden called 911 and Van Buren Police Officer Tront responded to the scene. Tront interviewed McFadden, Baker, and their father. He tried to dissuade McFadden from pursuing charges against her sister to no avail. Tront advised that he had no choice but to arrest Baker for domestic violence as the victim was her sister.

Tront and Baker arrived at the police station at 4:07 p.m. After being processed, Baker was placed in a holding cell "pending arraignment." Tront prepared and submitted his report to the supervising officer on staff that afternoon, Lieutenant Bazzy. Bazzy reviewed the report for completeness and assigned it to a member of the detective bureau—Sergeant McCarthy. The department's detectives had already clocked out for the day, and Baker was required to spend the night in her cell. At 8:45 the following morning, McCarthy contacted McFadden to verify the contents of her complaint. McFadden confirmed that she wished to pursue charges against Baker. Accordingly, McCarthy prepared a warrant request, which he submitted to the Wayne County Prosecutor's Office at 3:15 p.m. An assistant prosecutor denied the warrant request on the afternoon of September 17, citing "[i]nsufficient evidence to prove criminal charges beyond a reasonable doubt—not clear that the touching would be considered assaultive." The delayed response led to a second night in lockup for Baker. McCarthy released Baker shortly after receiving the warrant request denial, at approximately 4:00 p.m.

Baker filed suit against the township, Tront, Bazzy, and McCarthy, alleging counts of false arrest and false imprisonment. Baker asserted that her arrest was illegal as she and her sister did not reside together and had never resided together in her Belleville home and therefore the elements of domestic violence were not satisfied. Defendants falsely imprisoned her, Baker continued, by failing to take her promptly for arraignment.

Following cursory discovery, defendants sought summary disposition of Baker's claims on governmental immunity grounds. Defendants further contended that Baker's arrest and detainment were legal, warranting dismissal pursuant to MCR 2.116(C)(10). The plain language of the domestic violence statutes, defendants noted, proscribed assault and battery against

someone who currently or previously resided in the same household, without temporal limitations. Baker's two-day detention was also legal, defendants argued, because they could not take her for arraignment until the prosecutor determined whether to issue a warrant.

Baker retorted that Tront was not entitled to governmental immunity from her intentional tort claims because Baker's arrest was a ministerial, rather than discretionary, action. Specifically, Baker cited Tront's repeated assertions during her arrest that had no choice or discretion and was required to make an arrest because of the sibling relationship. Baker also continued to argue that her arrest was illegal because adult siblings who have not resided together in more than 30 years do not fall within the definition of a domestic relationship for domestic violence purposes. In relation to her detention, Baker cited statutes requiring the police to present suspects for arraignment "without unnecessary delay."

Baker contemporaneously requested permission to file a second amended complaint. Baker proposed to clarify the basis for her false arrest and false imprisonment claims. She sought to add as named defendants Sergeant Gueli, who served as Tront's immediate supervisor, and Jason Wright, the Van Buren Charter Township Director of Public Safety. Baker intended to accuse Bazzy, McCarthy, Gueli and Wright of gross negligence. She further proposed to hold the township accountable on respondent superior and ratification grounds.

The circuit court ultimately dismissed Baker's claims against McCarthy and the township on governmental immunity grounds. The court denied defendants' motion as to Tront and Bazzy because "Tront himself said that he had no discretion, he had no choice, and he was relying on what the directives he received from his lieutenant" were in arresting Baker. The court granted, in part, Baker's motion to file a second amended complaint.

## II. SUMMARY DISPOSITION

Tront and Bazzy now challenge the circuit court's denial of their motion for summary disposition. The standard of review applicable to this appeal was laid out in *Odom v Wayne Co*, 482 Mich 459, 466-467; 760 NW2d 217 (2008):

> We review de novo a trial court's determination regarding a motion for summary disposition. Under MCR 2.116(C)(7), the moving party is entitled to summary disposition if the plaintiff's claims are " 'barred because of immunity granted by law . . . .' " The moving party may support its motion for summary disposition under MCR 2.116(C)(7) with "affidavits, depositions, admissions, or other documentary evidence," the substance of which would be admissible at trial. "The contents of the complaint are accepted as true unless contradicted" by the evidence provided.

> In relation to a motion under MCR 2.116(C)(10), we similarly review "the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law."

. . . We review de novo questions of statutory interpretation. The primary goal of statutory interpretation is to discern the intent of the Legislature. "To do so, we begin with the language of the statute, ascertaining the intent that may reasonably be inferred from its language. When the language of a statute is unambiguous, the Legislature's intent is clear and judicial construction is neither necessary nor permitted." [Citations omitted.]

Tront and Bazzy are entitled to governmental immunity against Baker's false arrest and false imprisonment claims. Additionally, Baker failed to create a triable question of fact regarding either intentional tort claim. Accordingly, the circuit court should have summarily dismissed these counts.

MCL 691.1407 governs tort liability for individual government employees. Subsection (2) provides for governmental immunity against gross negligence claims when the employee "is acting within the scope of his or her authority" for an "agency," which "is engaged in the exercise or discharge of a governmental function." MCL 691.1407(3) provides that "the law of intentional torts as it existed before July 7, 1986" remains intact. *Odom*, 482 Mich at 470. "[T]he Legislature thereby removed immunity for intentional tort liability from the statutory grant of immunity in subsection 2." *Id*. "The seminal pre-July 7, 1986, case defining the parameters of governmental immunity for individuals from tort liability is *Ross v Consumers Power Co (On Rehearing)*[, 420 Mich 567; 363 NW2d 641 (1984)]." *Odom*, 482 Mich at 472. *Ross* provides qualified immunity from intentional tort liability for government employees. *Id*. at 473. The employee is entitled to immunity if he or she reasonably believed he or she was acting within the course or scope of his or her employment, acted in good faith (i.e. not malicious or for an improper purpose), and engaged in an act that was discretionary, rather than ministerial. *Id*. at 473-475. The burden "fall[s] on the governmental employee to raise and prove his entitlement to immunity as an affirmative defense." *Id*. at 479.

Baker has never challenged that Bazzy and Tront were acting within the course and scope of their employment and acted in good faith. The only remaining question is whether their acts were ministerial or discretionary. *Odom*, 482 Mich at 475-476, defines these terms as follows:

As explained in *Ross*, " 'A ministerial officer has a line of conduct marked out for him, and has nothing to do but to follow it; and he must be held liable for any failure to do so which results in the injury of another.' " Ministerial acts "constitute merely an obedience to orders or the performance of a duty in which the individual has little or no choice." The execution of an act once a decision has been made is also ministerial in nature. "Discretion," on the other hand, " 'implies the right to be wrong.' " Discretionary acts "require personal deliberation, decision and judgment." Although the decision need not be extraordinary, governmental immunity is not afforded for "every trivial decision" an actor may make. Granting immunity to an employee engaged in discretionary acts allows the employee to resolve problems without constant fear of legal repercussions. [Quoting *Ross*, 420 Mich at 626, 628, 634-635.]

Tront's act of arresting Baker was discretionary. Even if the statutes and department policy required Tront to arrest a domestic violence suspect, Tront had to use his discretion to

gauge whether probable cause existed to believe that domestic violence had occurred and that Baker had committed it. Determining whether probable cause exists to make an arrest is an example of a discretionary act cited in *Odom*, 482 Mich at 476 ("An officer must use his judgment to determine whether there is . . . probable cause to arrest. . . ."). See also *Devenpeck v Alford*, 543 US 146, 152; 125 S Ct 588; 160 L Ed 2d 537 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."). Tront was therefore entitled to immunity for his act (and Bazzy was entitled to immunity on vicarious liability grounds).

Tront and Bazzy would also be entitled to dismissal of the false arrest claim under MCR 2.116(C)(10) because Baker's conduct fell within the statutory definition of domestic violence. Baker focused her challenge on whether she and McFadden had a domestic relationship. MCL 764.15a(b) defines domestic violence, in relevant part, as occurring when the assailant "resides or has resided in the same household as the victim." MCL 750.81a(2) similarly defines domestic violence as an assailant "who assaults . . . a resident or former resident of the same household." Neither statute provides temporal restrictions. Accordingly, it is irrelevant under the plain language of the statutes that McFadden and Baker had not resided together in more than 30 years. They are sisters and had resided in the same household as children. This fell within the definition of a domestic relationship for domestic violence purposes. Accordingly, Baker cannot create a triable fact question that she was falsely arrested.

Tront and Bazzy are also entitled to governmental immunity against Baker's claim that they falsely imprisoned her. Neither department policy nor any statute specifically lays out a timeframe or schedule for officers to follow after arresting a suspect. The officers must decide when to book and fingerprint a suspect, when to transport the suspect to a cell, when to prepare their reports, and when to submit their reports to a superior officer. The superior officer must use his or her discretion to determine how to manage his or her workload and whether and when to delegate the matter to another officer. Similarly, as recognized by the trial court, the detective assigned the case then had to use his discretion to manage his workload, write up a warrant request, and decide to send it to the prosecutor's office. There were no mandatory or ministerial actions involved.

Additionally, Baker failed to create a triable issue on this count. MCL 764.13 provides for prompt arraignment following arrest:

> A peace officer who has arrested a person for an offense without a warrant shall *without unnecessary delay* take the person arrested before a magistrate of the judicial district in which the offense is charged to have been committed, and shall present to the magistrate a complaint stating the charge against the person arrested. [Emphasis added.]

MCL 780.581(1) similarly provides that when an officer arrests a person without a warrant for a misdemeanor, "the officer making the arrest shall take, *without unnecessary delay*, the person arrested before the most convenient magistrate of the county in which the offense was committed to answer to the complaint." (Emphasis added.) Generally, if no magistrate is available, the officer must allow the arrested individual to post bond. MCL 780.581(2). However, if the person is arrested without a warrant for domestic violence, he or she "shall not be released on an

interim bond . . . or on his or her own recognizance . . . but shall be held until he or she can be arraigned or have interim bond set by a judge or district court magistrate." MCL 780.582a(1). Our Supreme Court has long held that a person detained for an unreasonable period without arraignment may state a claim for false imprisonment. See *Oxford v Berry*, 204 Mich 197, 213; 170 NW 83 (1918) ("It is the duty of the officer who makes the arrest under warrant to exercise reasonable diligence in presenting the person arrested before the court; and it has been held repeatedly that where the officer unreasonably delays in making the arraignment, the delay amounts to false imprisonment."); *Linnen v Banfield*, 114 Mich 93, 97; 72 NW 1 (1897) ("Time is presumed to be of some importance to one incarcerated without process, and promptness is required when the information upon which proceedings are to be based is at hand, in order that the accused may not be deprived of the right to give bail.").

At issue here are the legal boundaries delineating an "unnecessary delay" in presenting an arrestee to a magistrate for arraignment, particularly when the individual has been arrested for domestic violence and cannot otherwise be released. The Van Buren Police Department's written policies suggest that this must be done within 44 hours. The United States Supreme Court has "hesitate[d] to announce that the Constitution compels a specific time limit" for presenting arrestees for probable cause determinations, but also acknowledged that "it is important to provide some degree of certainty so that States and counties may establish procedures with confidence that they fall within constitutional bounds." *Riverside Co v McLaughlin*, 500 US 44, 56; 111 S Ct 1661; 114 L Ed 49 (1991). The Court proceeded to hold, "[A] jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement . . . For this reason, such jurisdictions will be immune from systemic challenges." *Id*. An arrestee may still challenge his or her detainment that is shorter than 48 hours, however, "if the arrested individual can prove that his or her probable cause determination was delayed unreasonably." *Id*.

> Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake. In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility. Courts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities. [*Id*. at 56-57.]

The Supreme Court expressly declined to adopt 24 or 36 hours as the cutoff because "the administrative steps incident to arrest and arranging for a magistrate" take at least 36 hours in most areas. Forcing the lower time limit would compel "countless . . . jurisdictions across the Nation" to incur costs they cannot afford. *Id*. at 57-58. The Court further noted that some states require "a judicial determination of probable cause immediately upon completing the administrative steps incident to arrest—i.e., as soon as the suspect has been booked, photographed, and fingerprinted." *Id*. at 58. The Court clearly stated, "The Constitution does not compel so rigid a schedule, however." *Id*.

Baker was held for 48 hours; she was brought into the station at 4:07 p.m. on September 15 and was released at approximately 4:00 p.m. on September 17. During that time, defendants engaged in the steps necessary to ready an arrestee for arraignment. Tront booked and fingerprinted Baker and completed and submitted his report. Bazzy had received reports from multiple officers throughout the day and had to assign them to detectives. But by the time Bazzy was able to assign Baker's case, the station's detectives had left for the day. Detective McCarthy contacted McFadden by 8:45 the next morning. Baker's counsel did not ask McCarthy why he waited until the afternoon to forward a warrant request to the prosecutor's office. (It is possible, as suggested in *Riverside Co*, that McCarthy had multiple cases to manage and was unable to complete and fax the warrant request earlier.) The police then had to wait for the prosecutor's office to review the warrant request and forward its decision. Baker uncovered no evidence that this case involved delay for delay's sake or that the officers were trying to gather more information or that they disliked her and held her for longer than necessary.

Ultimately, although Baker undoubtedly was inconvenienced by the slow moving cogs in the prosecutorial machine, she presented no evidence that the approximately 48-hour delay in releasing her was unreasonable. Accordingly, these individual defendants were entitled to summary disposition of Baker's false imprisonment claim under MCR 2.116(C)(10).

### III. SECOND AMENDED COMPLAINT

Tront, Bazzy, and the township also challenge the circuit court's order granting Baker permission to file a second amended complaint. We review for an abuse of discretion a circuit court's ruling on a motion to file an amended complaint. *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 216; 859 NW2d 238 (2014).

MCR 2.118(A)(2) provides that leave to file an amended complaint "shall be freely given when justice so requires." Leave to amend should be "denied only for particularized reasons," "such as . . . futility of amendment[.]" *Ben P Fyke & Sons, Inc v Gunter Co*, 390 Mich 649, 655; 213 NW2d 134 (1973) (quotation marks and citation omitted). "An amendment would be futile if (1) ignoring the substantive merits of the claim, it is legally insufficient on its face, (2) it merely restates allegations already made; or (3) it adds a claim over which the court lacks jurisdiction[.]" *PT Today, Inc v Comm'r of the Office of Financial and Ins Servs*, 270 Mich App 110, 143; 715 NW2d 398 (2006) (citations omitted).

In her second amended complaint, Baker more clearly stated her claims of false arrest and false imprisonment against Tront. As noted, Tront was entitled to summary disposition of these intentional tort claims on grounds of governmental immunity and failure to create a triable fact question. Any attempt to clarify these claims would be futile as Tront would still be entitled to summary disposition and the circuit court should not have permitted this amendment.

Baker added new allegations in her intentional tort claims against Bazzy. She contended that Bazzy falsely imprisoned her by following a de facto department policy rather than the statutory requirements to ensure that Baker was arraigned without unnecessary delay. Baker further accused Bazzy of failing to train Tront on department policy and state law regarding the arrest and detainment of domestic violence suspects. Again, Bazzy was entitled to summary disposition of the false imprisonment count on both governmental immunity grounds and under

MCR 2.116(C)(10). Regardless of what policy or law Bazzy followed, Baker was released within 48 hours of her arrest and she presented no evidence of unreasonable delay. Further amendment in this regard would be futile.

As for the remainder of Baker's "intentional tort" claim against Bazzy, it does not make out an intentional tort. The failure to properly train an employee is a negligence claim. See *Cox v Bd of Hosp Managers*, 467 Mich 1, 11; 651 NW2d 356 (2002); *Zsigo v Hurley Med Ctr*, 475 Mich 215, 227; 716 NW2d 220 (2006). The motion to amend to add this count should have been denied as legally insufficient on its face.

In Count IV of the second amended complaint, Baker accuses Bazzy (as well the newly added parties Wright and Gueli) of gross negligence. Baker alleged that Bazzy's "ignorance of the law and ignorance of written Policy" breached his duty of care. This ignorance of the law requiring arraignment without unnecessary delay and the requirements for a valid domestic violence arrest amounted to gross negligence, Baker asserted.

Although Bazzy admitted ignorance of the department's written domestic violence policy, he did not claim ignorance of the state's domestic violence laws. It was the law and not the policy that Bazzy was bound to uphold. Accordingly, when Bazzy reviewed Tront's report, he was aware of the elements of a domestic violence charge and did not act with reckless disregard of the law when impliedly approving the arrest and assigning the matter to a detective.

Bazzy also acted within the law by detaining Baker. Although Baker alleges that the matter should have been handled more expeditiously, she does not outline any facts showing that Bazzy acted with reckless disregard of the need to process and present Baker for arraignment in a timely fashion. Specifically, Baker never asked Bazzy, Tront, or McCarthy to explain why certain steps in the process took as long as they did. Accordingly, she can only speculate that the officers did something wrong, either intentionally or negligently. The addition of the gross negligence claim against Bazzy was therefore futile.

Baker also proposed a new claim against the township, bringing it back into the action after the township's motion for summary disposition had been granted. Baker alleged that the township was liable on respondeat superior grounds for the gross negligence of its employees. Baker also asserted that the township had ratified the intentional torts of its employees.

When an agent purporting to act for his principal exceeds his actual or apparent authority, the act of the agent still may bind the principal if he ratifies it. The Restatement of Agency (2d), § 82, defines ratification thusly:

"Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." "Affirmance" is defined in section 83 of the Restatement:

"Affirmance is either

"(a) a manifestation of an election by one on whose account an unauthorized act has been done to treat the act as authorized, or

-8-

"(b) conduct by him justifiable only if there were such an election." [*City Nat'l Bank v Westland Towers Apartments*, 152 Mich App 136, 142-143; 393 NW2d 554 (1986), quoting *David v Serges*, 373 Mich 442, 443-444; 129 NW2d 882 (1964).]

Neither Bazzy nor Tront exceeded their authority in arresting and detaining Baker; the arrest and detention were legal as already noted. Accordingly, there was no improper act for the township to ratify. Similarly, there was no improper act for the township to be held vicariously liable for. Baker's additional claims against the township were also futile and the circuit court abused its discretion in granting Baker's motion to file a second amended complaint.

In Docket No. 336324, we reverse the circuit court's denial of summary disposition to defendants Bazzy and Tront. In Docket No. 336529, we reverse in part the court's order granting Baker permission to file a second amended complaint, and remand for continued proceedings. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra
/s/ Jonathan Tukel